William E. and Nora **BORING**, York Farm Supply, Inc., and Alfred W. Shellenberger, Plaintiffs,

v.

**MEDUSA PORTLAND CEMENT CO.** and National Gypsum Company, Defendants.

Civ. No. 72–38.

United States District Court,
M. D. Pennsylvania.

May 14, 1974.

As Amended June 13, 1974.

John F. Rauhauser, Jr., John C. Uhler, York, Pa., for plaintiffs.

William H. Wallace, Thompson, Hine & Flory, Cleveland, Ohio, Robert O. Beers, Anderson, Ports, May & Beers,

Lewis H. Markowitz, Markowitz, Kagen & Griffiths, York, Pa., for defendant Medusa Portland Cement Co.

Robert J. Brown, Kain, Brown & Roberts, York, Pa., for defendant National Gypsum Co.

## MEMORANDUM OPINION

HERMAN, District Judge.

The plaintiffs have requested this court to certify their law suit [1] as a class action pursuant to Rule 23(b)(3), Federal Rules of Civil Procedure.

The plaintiffs originally filed suit in state court on April 22, 1970. In December 1971 the defendants removed the action to federal court pursuant to 28 U.S.C. § 1441. On March 10, 1972 the complaint was amended to make the suit a class action. On August 15, 1973 the plaintiffs formally moved to have the court certify the instant case as a class action.

In addition to opposing certification on the merits, the defendants also question the timeliness of the plaintiffs' motion to certify. Although all but abandoned during oral argument, the matter of timeliness must be first disposed of before reaching the merits.

Defendants argue the "delay" to be violative of Rule 23(c)(1):

"As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. . . ."

■■ The time at issue is to be computed from the date of the amended complaint filed on March 10, 1972. Seligson v. Plum Tree, Inc., 55 F.R.D. 259 (E.D.Pa.1972). Moreover, the rule does not mandate that the plaintiff must seek certification. The court may act *sua sponte* or the defendant may move to have the court rule the action unmaintainable as a class action. 3B Moore, Federal Practice § 23.40, at 1102. In order to avoid any prejudice to themselves, the defendants were free to petition the court on the issue of certification. The defendants have shown no prejudice to their case as a result of the seventeen months lapse. *Cf.* Castro v. Beecher, 459 F.2d 725 (1st Cir. 1972).

■ Finally, the defendants point to Rule 701.07(c) of the local rules of the Middle District of Pennsylvania which requires the plaintiff to move for class action certification within 90 days of filing a complaint. Our local rules became effective July 6, 1973, and have no retroactive effect.

■ The court, therefore, concludes that the motion for certification was timely filed.

■ The court requested supplemental briefs from the parties on the closely related issues of jurisdiction and certification in view of Zahn v. Intl. Paper Co., 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed. 2d 511 (1973). In concert with Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969), Zahn mandates that each named or unnamed member of a class must satisfy the jurisdictional amount requirement of 28 U.S.C. § 1332(a).[2]

The case at bar presents 221 named plaintiffs with claims ranging from about $100 to $34,000. Only three named plaintiffs have damage claims which meet the $10,000 requirement of §

---

1. Jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332(a). The plaintiffs are residents of York County. National Gypsum is a Delaware Corporation, and Medusa Portland Cement is an Ohio Corporation. The defendants are accused of releasing large amounts of insoluble contamination into the atmosphere over York, Pennsylvania. The contaminates are all by-products of the cement and gypsum business: sulfides, lime, silica, carbons, etc.

2. As a practical matter Zahn has made class action certification a jurisdictional issue. In Kahan v. Rosenstiel, 424 F.2d 161, 169 (3d Cir. 1970), a pre-Zahn decision, this circuit ruled that a federal cause of action is not a prerequisite to class action certification.

1332(a).[3] Moreover, as in the district court's ruling in Zahn, it here too appears "to a legal certainty" that not every proposed class member will satisfy the jurisdictional amount. 53 F.R.D. 430, 431 (D.C.Vt.1971).

The Zahn decision raised both jurisdictional and class certification questions relevant to the instant action. The Zahn case, seeking exclusively damages, presented a uniform group of named plaintiffs each satisfying the $10,000 jurisdictional amount requirement of § 1332(a). The court unequivocally stated that Rule 23(b)(3) certification is not available unless every member, named and unnamed, meets the requirements of § 1332(a):

> "Each plaintiff in a Rule 23(b)(3) class action must satisfy the jurisdictional amount, and any plaintiff who does not must be dismissed from the case—'one plaintiff may not ride in on another's coattails.'" 414 U.S. 291, at 301, 94 S.Ct. 505, at 512, 38 L.Ed.2d 511, at 519.

▮ Rule 23, as an exclusively procedural device, is available only when the evidence indicates that all possible plaintiffs not enforcing a single right, individually satisfy the required amount. Were the instant case standing alone as a suit seeking exclusively damages, the court would be compelled to dismiss all but three plaintiffs and decline to consider class action certification.

The plaintiffs impliedly concede as much, but argue that Zahn is not controlling because they seek *both* damages and injunctive relief. The presence of an unspecified prayer for an injunction, the plaintiffs assert, brings into control the cases of Illinois v. City of Milwaukee, 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed. 2d 712 (1972) and Pa. R.R. Co. v. City of Girard, 210 F.2d 437 (6th Cir. 1954).

The apparent theory behind such a conclusion was expressed in Pa. R.R. Co. v. City of Girard. The court found the measure of the jurisdictional amount in an injunction to be "the value of the right sought to be protected," not the actual damages thus far inflicted. The plaintiffs urge the applicability of City of Girard which found jurisdiction based on the right to be protected in the injunction, despite lack of jurisdictional amount in the damage action.

> "Jurisdiction under Title 28, Section 1331, depends 'not alone upon the pecuniary damage resulting from the acts complained of, but also upon the value of the rights, which plaintiff seeks to have protected. . . . Since the suit is for injunction as well as for damages, the test is the value of the controversy. . . ." *Id.*, at 439.

The City of Milwaukee was exclusively an abatement action brought by the State of Illinois against the City of Milwaukee and others in an attempt to halt the defendants' alleged pollution of Lake Michigan. The unanimous court rejected any claim of original exclusive jurisdiction based on 28 U.S.C. § 1251, and Art. III § 2 cl. 2 of the United States Constitution. Instead, the court bottomed jurisdiction on 28 U.S.C. § 1331 (a) concluding that the matter of interstate waters created a sufficient basis upon which to find a federal question. But § 1331, like § 1332, nevertheless requires satisfaction of the jurisdictional amount. The court dispensed with that hurdle by noting:

> "The considerable interests involved in the purity of interstate waters would seem to put beyond question the jurisdictional amount . . . ." 406 U.S., at 98.

---

3. The trial court in Zahn also rejected a claim of ancillary jurisdiction. The plaintiffs had argued that the court had ancillary jurisdiction over the non-qualifying members of the class by virtue of its jurisdiction over the qualifying, named members. 53 F.R.D. 430, 432 (D.C.Vt.1971).

The instant case, of course, does not arise under the laws of the United States, but rather diversity of citizenship. In either case, however, the plaintiffs must satisfy the jurisdictional amount in excess of $10,000. Therefore, the plaintiffs argue, Illinois v. City of Milwaukee is authority for the proposition that a claim of environmental pollution per se satisfies the jurisdictional amount prerequisite of § 1332 [4] in an injunction action.

By combining City of Milwaukee's observation that abatement of pollution is per se worth $10,000 with the rationale enunciated in City of Girard, the plaintiffs conclude that the court has jurisdiction over the entire controversy.

Although neither City of Girard nor City of Milwaukee was a class action, the plaintiffs nevertheless seem to be arguing that Zahn is not relevant whatsoever to a class action which seeks both damages *and* an injunction to enjoin pollution.

This court does not find the language in City of Milwaukee entirely persuasive in establishing the jurisdictional amount in the instant case. City of Milwaukee was exclusively an injunction action involving a single body of polluted water, a single plaintiff and but one defendant. The Court in City of Milwaukee did no more than value Lake Michigan in excess of $10,000. It did not conclude that everyone using the lake had a claim valued in excess of the jurisdictional amount.

Biechele v. Norfolk & Western Rwy. Co., 309 F.Supp. 354 (N.D.Ohio 1969), though not cited by the plaintiffs, seems more on point. That ruling accepted the rationale of City of Girard, was a class action, and was based on § 1332(a).

The Biechele case reached the federal court upon removal from the state system pursuant to 28 U.S.C. § 1441(c).

The Biechele court had only Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969), upon which to base its conclusion that "the right of each member of the class to live in an environment free from excessive coal dust and conversely, the right of defendant to operate its coal loading facility are both in excess of $10,000.00." 309 F.Supp., at 355. The court did not assume jurisdiction over damage claims simply because of the above observation. First, the court *began* its inquiry having already concluded that the damage and injunction actions were certifiable under Rule 23. Second, the court based its jurisdiction over the damage action on the removal statute, 28 U.S.C. § 1441(c):

"Jurisdiction properly lies in this court under 28 U.S.C. § 1441(c). The claims are sufficiently separate to allow removal of the injunctive action alone. Therefore this Court, in the interest of judicial efficiency, will assume jurisdiction over the entire controversy." 309 F.Supp., at 355.

Section 1441(c) likewise expressly leaves such an assumption of jurisdiction to the discretion of the court:

"Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, *may remand all matters not otherwise within its original jurisdiction*." (Emphasis supplied)

---

4. Neither the plaintiffs' briefs nor oral argument specify what sort of jurisdiction the City of Milwaukee case would create. Apparently the plaintiffs would have the court assume ancillary jurisdiction over the class of damage actions by virtue of our alleged jurisdiction over the injunctions.

In order to accept jurisdiction over the various claims in the case at bar, this court would first have to conclude that any time a plaintiff seeks to enjoin environmental pollution of any sort the jurisdictional amount is satisfied. We have already expressed our doubt about the efficacy of such a procedure, especially where, as here, it is used as a method of *creating* jurisdiction over thousands of damage claims where jurisdiction would otherwise be lacking.

Beyond that, we note that the Biechele court had previously concluded that both the injunction and damage actions were properly certifiable as class action suits. It follows that if the injunction action conferred jurisdiction over the damage claims it did so only to the extent that the court certified the injunction as a class action. The Biechele court, having found the injunction fully appropriate for certification (for reasons not expressed by the court), consequently concluded that it was judicially economical to retain jurisdiction over the hundreds of damage claims also previously certified as a class. Even were we to accept the premise advanced by the plaintiffs, the Biechele precedent nevertheless is based on discretionary jurisdiction applied *if* the court certifies the injunction as a class action.

Accepting *arguendo* the premise that each proposed plaintiff has an equity claim in excess of $10,000, this court, for reasons hereafter stated, concludes the instant injunction question to be inappropriate for class action certification. Consequently, it would be improper to retain jurisdiction over thousands of damage claims well below the $10,000 mark.

Rule 23(b) expressly states:

"(b) Class Actions Maintainable. An action may be maintained as a class action *if* the prerequisites of subdivision (a) are satisfied, *and* in addition:

\*  \*  \*  \*  \*  \*

"(3) the court finds . . . that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. . . ." (Emphasis supplied)

Indeed, the court need go no further than the initial inquiry regarding superiority if the court finds such certification not to be the superior means of adjudication. Wilcox v. Commerce Bank of Kansas City, 474 F.2d 336, 345 (10th Cir. 1973); Umdenstock v. American Mtg. & Inv. Co. of Oklahoma City, 363 F.Supp. 1375 (W.D.Okl.1973); Dolgow v. Anderson, 43 F.R.D. 472 (E.D.N.Y. 1968); 3B Moore, Federal Practice § 23.45[3].

The plaintiffs, individually and as a proposed class, seek abatement of finely ground limestone dust released into the air from two nearby sources. It is noteworthy that the plaintiffs filed suit in 1970 seeking unspecified injunctive relief, yet have never moved for an order of court granting such relief.

The desired result of the injunctive relief presumably can be satisfied either by an order compelling complete cessation of the defendants' activities or installation of devices to bring the emissions within tolerable levels.

The class action avenue would require instituting time-consuming and costly notice procedures and compilation of the "opt-out" requests filed by persons wishing exclusion from the class. The problem is greatly aggravated by the plaintiffs' attempt to include past residents, transitory persons and even visitors in the already large class of plaintiffs. Such elaborate procedures would appear to serve no useful end insofar as the injunction remedy is concerned.

It appears to this court that the doctrine of res judicata is the only significant argument even hinting at the superiority of class action certification. Even the advantage of res judicata is seriously undermined as a result of Blon-

der-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) and Katz v. Carte Blanche Corp., 496 F. 2d 747 (3d Cir. 1974) (Civil No. 72–1054, March 15, 1974).

In Katz our circuit reversed a district court's certification, noting:

"The district court points out that if Katz' case went forward alone it would not be binding upon anyone other than Mr. Katz. That is only partly true. Judgment against Katz would not protect Carte Blanche against other class members, but judgment for Katz would bind Carte Blanche in suits by other class members. In making its superiority determination the district court overlooked that factor, and disregarded the fact that Carte Blanche was content to take its chances on stare decisis rather than res judicata." 496 F.2d, at 758.

Further, the circuit noted the district court's failure to grapple with Blonder-Tongue, *supra.* That case involved relitigation of a patent infringement. The Supreme Court allowed application of res judicata and collateral estoppel as affirmative defenses, notwithstanding the lack of complete identity of the parties. By clear implication the court in Katz indicated that Blonder-Tongue is applicable to class certification when considering superiority. Katz, *supra,* at 760.

█ It is apparent to this court that, taken as a whole, class action certification would not be the superior avenue of adjudicating the instant claims. Consequently, the court would need to go no further in consideration of the certification issue. Wilcox, *supra.*

Assuming *arguendo* the existence of jurisdiction and setting aside the issue of superiority, this court nevertheless concludes that the claims presented would be unmanageable as a class action requiring a denial of certification in any event. The size of the proposed class is at least 1,000 persons and likely many more residents of York, Pennsylvania. The air pollution involved is allegedly from *two* sources releasing similar compounds in such a fashion as to raise considerable evidentiary problems. Such problems of proof are greatly increased because each resident, motorist or business is in a different proximity to the plants than the other class members. In effect, *each* plaintiff would have to separately establish what mixture of pollution caused him damage depending on the wind, location of the factories, etc. It is inconceivable that a single ratio of pollution by the two defendants could apply uniformly throughout the class. The plaintiffs would have to individually establish the liability of each defendant, then the respective roles of the defendants vis-à-vis each other.

Moreover, the plaintiffs include home renters, home owners, motorists and the like. The physical task of calculating the damage to a lessee's interest in a dwelling as well as the owner's damage therein would be immense, indeed prohibitive. The physical manageability is increased a thousandfold in trying to calculate the nature and extent of injury to vehicles temporarily in the York area, to say nothing of the difficulty of attributing the ratio of liability between the named defendants.

Finally, we note that the plaintiffs' proposed class fails to satisfy the requirement that common questions of law and fact predominate. The proposed class not only consists of wholly distinct degrees of damage, but wholly different types of damage. The only common fact is the allegation that their damages are caused by the same sources. The nature of the differing injuries runs the gamut from damage to fee simple and leasehold interests in real estate to damaged personalty, unpleasant surroundings and an

unsightly environment. Moreover, many of the named plaintiffs claim to have suffered compensable personal injury.

The plaintiffs contend that the overriding common fact is the liability of the defendants. Once that is established, the plaintiffs argue, the class members merely need line up to put in their specific claims. However, the very nature of the claims makes a single finding of liability impossible. At best, liability would have to be established as to several already apparent sub-classes. The showing of excessive quantities of pollutants hardly establishes liability as to home damage *and* personal injury. The very experts needed would be totally distinct. Furthermore, the class members are geographically dispersed in such a fashion that it is unlikely that any large group suffered the same quantity of "fall-out." Liability cannot be established in a single mass proceeding. Perhaps the output and chemical composition of the pollution is subject to a single answer in that experts might establish the degree of pollution from the sources in concentric circles outward. In such a fashion each plaintiff might then need only indicate the zone in which he worked or lived and thereby establish the quantity of pollution to which each was subject. Such a time-savings of a common question is illusory in view of Blonder-Tongue, *supra*, and Katz, *supra*. More important, far too many completely *un*common questions of fact would thereafter require resolution on a case by case basis. Superimposed on the entire matter is the fact that two defendants are facing liability with each exhibiting competing interests.

In sum, we find that class action certification is not the superior mode to adjudicate the instant cases; that the proposed class would be unmanageable; and that common questions of law and fact do not predominate.

An appropriate order will be entered.