**Kimberly MATTOON, Max Mattoon, Theresa Gorman, Garry Gillette, Thomas P. Carey, Mark S. Gerebereux, Gerald Paquette, Dorothy L. Green, Stanley Kurek, Scott A. Behrent, Milton H. Perkins, Mary Krack, Monica Larue, and Robert Larue, Plaintiffs,**

**v.**

**CITY OF PITTSFIELD, Krofta Engineering Corp., Lenox Institute for Research, Inc., O'Brien & Gere, Inc., Metcalf & Eddy, Inc. and Fisher & Porter Co., Defendants.**

**Civ. A. No. 88–0128–F.**

United States District Court,
D. Massachusetts.

Nov. 2, 1989.

Stanley Cooke, Pittsfield, Mass., for plaintiffs.

David O. Burbank, Cain, Hibbard, Myers & Cook, Pittsfield, Mass., for City of Pittsfield.

John A. Wickstrom, Worcester, Mass., for Fisher & Porter Co.

David J. Hatem, Posternak, Blankstein & Lund, Boston, Mass., for O'Brien & Gere, Inc.

William Shields, Katherine Perrell, Day, Berry & Howard, Boston, Mass., for Metcalf & Eddy, Inc.

Frederica H. McCarthy, John Sikorski, Robinson, Donovan, Madden & Barry, P.C., Springfield, Mass., for Krofta Engineering Corp. and Lenox Institute for Research, Inc.

## MEMORANDUM AND ORDER

FREEDMAN, Chief Judge.

### I. INTRODUCTION

Throughout the early 1980s, beavers living in Pittsfield's Ashley Reservoir infected the water supply with a pathogenic virus known as giardiasis lambia. Fourteen persons, the plaintiffs in the instant action, claim that the virus caused them to become ill and suffer personal injuries. Accordingly, they have filed a lawsuit for injunctive and monetary relief against the City of Pittsfield and five corporate defendants.[1] Plaintiffs contend that as many as seven hundred Pittsfield residents contracted "beaver fever" of varying severity. Plain-tiffs' First Amended Complaint ¶ 12. Other estimates place the number closer to five thousand. *Id.* Some people suffered only diarrhea, or stomach cramps, while others had more serious injuries. One woman claims she suffered a miscarriage due to a giardiasis-related illness.

This case has a long and complex procedural history, which the Court summarizes briefly as follows. Plaintiffs filed an original complaint on June 30, 1988. An amended complaint was filed on September 11, 1989. Plaintiffs allege that defendants failed to provide safe and pure drinking water to Pittsfield residents, in violation of federal and Massachusetts statutes. Federal Safe Drinking Water Act of 1974, Pub.L. No. 93–523 § 2(a), 42 U.S.C. § 300j–8; Mass.Gen.Laws ch. 111, §§ 160 *et seq.* Plaintiffs also allege claims of negligence, breach of warranty, nuisance, and civil rights violations.

This Court referred the case to Magistrate Michael Ponsor for pretrial hearings and proceedings. On March 24, 1988, plaintiffs filed a motion for class certification pursuant to Fed.R.Civ.P. 23. Plaintiffs sought to sue defendants on behalf of all persons who contracted giardiasis due to defendants' negligence. In his Report and Recommendation to the Court, the Magistrate recommended, *inter alia*, that plaintiffs' motion for class certification be denied. Plaintiffs have objected to the recommendation only to the extent that the Magistrate recommends denial of class certification. Plaintiffs have filed a memorandum in support of their objection. Therefore, plaintiffs' motion for class certification is now before the Court.

### II. STANDARD OF REVIEW

This matter was referred to the Magistrate for a report and recommendation pursuant to the provisions of 28 U.S.C. § 636(b)(1).[2] That section further provides

---

1. The five, all engineering or consulting firms, had each contracted with the City to address and relieve the City's water woes.

2. 28 U.S.C. § 636(b)(1) provides in relevant part as follows:

(b)(1) Notwithstanding any provision of law to the contrary—
(A) a judge may designate a magistrate to hear and determine any pretrial matter pending before the court, except a motion ... for summary judgment....

that "[a] judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1).

In construing the terms of section 636(b)(1), the First Circuit has held that a district court need not hold a brand new hearing to satisfy the *de novo* standard of review. *Gioiosa v. United States*, 684 F.2d 176, 178–79 (1st Cir.1982). Instead, it is sufficient that the district court review the transcript or record of the hearing in sufficient detail to make its own determination with regard to each disputed factual finding. *See generally Gioiosa*, 684 F.2d at 178 and cases cited.

### III. MOTION FOR CLASS CERTIFICATION

 The district court may at its discretion certify a group of persons as a class for class action purposes. *Fink v. National Savings and Trust Co.*, 772 F.2d

951, 964 (D.C.Cir.1985) ("broad discretion"); *Freeman v. Motor Convoy, Inc.*, 700 F.2d 1339, 1347 (11th Cir.1983). Once certified, the named persons act as representatives of the class, and bring the suit on behalf of the class.

An action may be brought as a class action if it meets the criteria set out in Rule 23 of the Federal Rules of Civil Procedure.[3] As the language of the Rule indicates, all class actions must satisfy both section (a), and any one of the three parts of section (b). The Magistrate correctly noted that sections (b)(1) and (b)(2) of Rule 23 do not apply to the instant action, as these sections "are largely concerned with claims for equitable relief." Magistrate's Report and Recommendation, September 11, 1989, at 7. Therefore, a class action is proper in this case if sections (a) and (b)(3) are satisfied.

The Court finds that the requirements of section (a) are met in this case. It would be impractical to join hundreds of people as plaintiffs in the action. Section (a)(1). Common questions of fact or law exist,

---

(B) a judge may also designate a magistrate to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A)....

3. Rule 23, in relevant part, reads as follows:

(a) **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) **Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

including questions regarding the legal duty, if any, owed by the City to the plaintiffs, and whether the City breached its duty by delivering contaminated water to City residents. Section (a)(2). The typicality requirement poses no obstacle to the certification of the class, section (a)(3), and the parties appear quite capable of fairly and adequately protecting class interests. Section (a)(4).[4]

Section (b)(3) requires predominance of common questions and superiority of class actions over other methods of adjudication. Because the Court finds that common issues do not predominate over individual issues, plaintiffs' motion for class certification will be denied.

## A. Predominance

Courts have wrought their own definitions of "predominate" in the Rule 23 context. Although the courts have failed to develop any "ready quantitative or qualitative test," it is clear that "it is not sufficient that common questions merely exist...." 7A C. Wright, A. Miller and M. Kane, *Federal Practice and Procedure: Civil* § 1778 (2d ed. 1986). "The common issues must actually outweigh the individual ones in terms of quantity or quality." *Ryan v. Eli Lilly & Co.*, 84 F.R.D. 230, 233 (D.S.C.1979).

 Some courts have placed emphasis on whether a "common nucleus of operative facts" gives rise to the claims. *Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir. 1968). This Court is hesitant to adopt such a test. It is not enough that the claims simply arise out of a common nucleus of operative fact. Instead, the common questions must be central to all the claims. The resolution of common questions need not dispose of the action, of course. *Mertens v. Abbott Labs*, 99 F.R.D. 38, 41 (D.N.H. 1983). But common issues are predominant only if their resolution would "provide a definite signal of the beginning of the end." *Id.*

 In *Ryan, supra,* the court had to decide whether it should certify as a class all South Carolina women who had been exposed *in utero* to DES, a harmful synthetic estrogen. Plaintiff claimed that she, like numerous other women in the state, faced a high risk of cancer due to her mother's use of DES during pregnancy. The court did not certify the group due to the individualized nature of the proof.

> The mothers of the proposed plaintiffs in this case each used a synthetic estrogen; however, the length of exposure, the reason for the drug's use, the specific chemical formulation of the drug, the state of the art at the time of consumption or the manufacturer's knowledge of synthetic estrogen's carcinogenic effect and possible medical result in the absence of the estrogens are all specific points going toward proximate causation which will require proof for each individual class member.

*Ryan*, 84 F.R.D. at 233. In other words, the court found that the circumstances surrounding individual class members made each claim different, even though the claims all arose from the production, distribution, and use of defendants' drugs. "It is the necessity of such separate evidentiary showings that leads this Court to conclude the common questions of fact do not predominate." *Id.*

In *Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188 (6th Cir.1988), the Sixth Circuit Court of Appeals affirmed a district court decision to certify a class of property owners who sought damages for personal and property injuries due to hazardous chemicals in the local water supply. The court, while holding that the district court did not "abuse its discretion" by certifying the class, *id.* at 1197, stated that:

> [I]n complex, mass, toxic tort accidents, where no one set of operative facts establishes liability, no single proximate cause equally applies to each potential class member and each defendant, and individual issues outnumber common issues, the district court should properly

---

**4.** Defendant City of Pittsfield has alerted the court to a potential conflict of interest involving City Councilor Peter Arlos and his wife, Alma,

an attorney for plaintiffs. The court, although concerned about this issue, finds no reason to consider it at this time.

question the appropriateness of a class action for resolving the controversy. However, where the defendant's liability can be determined on a class-wide basis because the cause of the disaster is a single course of conduct which is identical for each of the plaintiffs, a class action may be the best suited vehicle to resolve such a controversy.

*Id.* The court finds the reasoning in *Ryan* and *Sterling* persuasive and, in light of the managerial difficulties that class actions can create, quite pragmatic.

At first blush, *Sterling* appears similar to the case at bar. However, a class action based on the facts in *Sterling* does not threaten to be as complex and unmanageable as a class action in the instant case. *Sterling* involved one defendant, easily linked under the circumstances to the plaintiffs' injuries. Proximate causation was not a difficult issue. The instant case involves one municipality and five independent contractors as defendants. Each defendant had a separate contract with the City, with some contracts substantially predating the giardiasis outbreak. Plaintiffs' First Amended Complaint ¶ 57 (Defendant Metcalf & Eddy began working for the City in 1975). Each defendant performed a different task: some defendants were hired as consultants, one apparently installed a chlorination system, while another manufactured the water filtration system. *See* Defendant Krofta's Further Opposition to Class Certification at 5–6. Because of their different capacities, and different contractual duties, some defendants may be liable on any given legal theory while another defendant may not be. Defendants differ as to amount of time involved on the water project, reason for involvement, and type of work performed. Therefore, this case is not one where "one set of operative facts establishes liability." *Sterling*, 855 F.2d at 1197. Neither does a "single proximate cause equally appl[y] to each potential class member and each defendant...." *Id.* Rather, proximate cause will necessarily be different for every person in the proposed class, based on each person's length of exposure to contaminated water, notice, pre-existing medical conditions and

other factors. For these reasons, defendants' liability can not "be determined on a class-wide basis...." *Id.* at 1197. Common questions, in sum, do not predominate. Proximate causation with regard to each party remains a thorny, individual question. The liability of each defendant under the various legal theories asserted in the complaint will also require individual attention. Damages, of course, are individual issues as well.

*B. Manageability*

■ It is also clear that classes should not be certified if it seems likely that the class action "would degenerate into a series of mini-trials before liability could be established." *Nichols v. Mobile Bd. of Realtors, Inc.*, 675 F.2d 671, 679 (5th Cir. 1982). Professor Moore warns that cases likely to "splinter into individual trials" are not appropriate as class actions. 3B *Moore's Federal Practice* ¶ 23.45[2] (*see* cited article, cases, at n. 20.)

Plaintiffs' complaint contains thirty-eight counts, including claims based on federal and state clean water statutes, federal civil rights provisions, breach of warranty, and negligence. The City has asserted cross-claims against the other defendants. At this point, it is unclear which defendants, if any, would be liable on the various legal theories asserted by plaintiffs. Each defendant will probably offer distinct arguments in defense. Further pre-trial maneuvering by the parties would stir the already muddy procedural waters. A class action would almost certainly become a "series of mini-trials" due to the various legal claims and separate defenses. To certify this action as a class action would be, as Judge Haight stated, to "unleash a Frankenstein monster of unmanageability, weighted down with individual questions of fact and law which clearly predominate, to the potential disadvantage of litigants, and to the certain prejudice of the orderly disposition of such enforceable legal claims as may arise...." *Feinstein v. Firestone Tire & Rubber Co.*, 535 F.Supp. 595, 608 (S.D.N.Y. 1982). This Court heeds the warnings offered by Professor Moore and Judge

Haight, and declines to certify a class in this case.[5]

## IV. CONCLUSION

For the reasons stated, plaintiffs' motion for class certification is DENIED.

It is So Ordered.

---

5. Because the Court finds that common questions do not predominate, the Court need not consider whether a class action is superior to other available methods of adjudication. *See* Fed.R.Civ.P. 23(b)(3).