The COMMONWEALTH OF PUERTO RICO on its own Behalf, and as Public Trustee and as Parens Patriae for the Citizens of the Commonwealth, the Environmental Quality Board of the Commonwealth of Puerto Rico and the Department of Natural Resources of the Commonwealth of Puerto Rico, Plaintiffs

v.

The M/V EMILY S and the Barge Morris J. Berman, in rem; Metlife Capital Corporation, Peter Frank, Bunker Group Puerto Rico, Inc., Bunker Group, Inc.; Park Lane Associates, Pedro Rivera, New England Marine Services, Inc., ABC Insurance Company and DEF Insurance Company in personam, Defendants.

Yaacov EISAK, Intervening Plaintiff,

Raul Horta–Gonzalez, Diega Castillo–Hernandez, Adolfo Arnau–Sanchez, Rosa Alday–De–Arnau, Mari Rodriguez–Herrero, Lilian Rodriguez–Herrero, Maite Maldonado–Hernandez, Margarita Rivera–Marrero, Antonio Rodriguez–Rodriguez, Martina Espirio–Rosario, Fernando Biascochea, Lucia Polanco–Martinez, Rafaela Castillo–De–Paula, Pedro Umpierre, Hector Sanfelis, Eddie Mejias, Rogelio Gonzalez, Ucrania Martinez–Polanco, Jacinta Acosta–Alcequiez, Isabel Martinez–De–La–Cruz, Eduardo Feliz–Reyes, Juan Valerio Florio–Gonzalez, Maria Araya–Gonzalez, Daniel Nieves–Molina, Dulce Maria Contreras, Olivia Fernandez–Grullon, Jorge Espinosa, Cristina Barne, Maria A. Peña–Carrasco, Amalia Perez, Altagracia Lopez and Jorge Luis Matos, Plaintiffs representative of proposed class,

Cafe St. Elmo, Inc., Havana San Juan Corp., Oasis Restaurant, Inc., Eddie Mejias d/b/a Souvenir Shop, Individual Plaintiffs,

v.

The TUG EMILY S, and the Barge Morris J. Berman, Defendants in rem,

A. Clyde Pruitt; Emily S. Pruitt, Peter Frank; John Doe and/or Richard Doe; New England Marine Services, Inc.; Evelyn Berman Frank, Susan Frank; Jim Doe and/or Sam Doe; Standard Tank Co.; Peter Doe; Bunkers Group of Puerto Rico; Caribbean Petroleum Corporation; Jimmy Doe; Insurance Companies and/or P & I Clubs "A" Through "J", Defendants in personam.

ESCAMBRON BEACH CLUB, INC., Plaintiff

v.

M/V EMILY S. Barge Morris J. Berman, in rem; New England Marine Services, Inc. A. Clyde Pruitt; Emily S. Pruitt Doe Company, Richard Roe, Defendants.

In the Matter of the Complaint of METLIFE CAPITAL CORPORATION, as owner of the Tub "Emily S," for Exoneration from or Limitation of Liability.

Civ. Nos. 94–1019CCC, 94–1047CCC, 94–1058CCC and 94–1919CCC.

United States District Court, D. Puerto Rico.

Oct. 5, 1994.

As Amended Nov. 8, 1994.

Pedro R. Pierluisi, María M. Pabón, Dept. of Justice, Federal Litigation Div., San Juan, PR, Antonio J. Rodríguez, Rice, Fowler, Kingsmill, Vance, Flint & Booth, New Orleans, LA, John F. Nevares, Smith & Nevares, and Eric M. Quetglas–Jordan and Jorge Carazo–Quetglas, San Juan, PR, for plaintiffs.

José F. Sárraga, San Juan, PR, for intervening plaintiff.

William A. Graffam, Jimenez, Graffam & Lausell, San Juan, PR, John M. Woods, Andrew J. Garger, Thacher Proffitt & Wood, New York City, Edelmiro Salas–García, Old San Juan, PR, Ada Pilar Martin–Casals, Ledesma, Palou & Miranda, Hato Rey, PR, Christopher Carpentieri, Stults & Balber, P.C., and Jacob Shisha, Tabak & Mellusi, New York City, for defendants.

## ORDER

CEREZO, Chief Judge.

This Order concerns the putative class action that has been filed as a result of the January 7, 1994 oil spill from the barge **MORRIS J. Berman** off Punta Escambrón, San Juan, Puerto Rico. Mr. Raúl Horta–González and 31 other named plaintiffs have moved in Civil 94–1047CCC, consolidated with Civil 94–1019CCC, for certification of a class under Federal Rule of Civil Procedure 23(b)(3), in order to pursue their claims for personal injuries, which they assert to be attributable to exposure to the fumes from the bunker # 6 fuel oil that spilled from the barge MORRIS J. BERMAN. The parties having fully briefed the legal issues and presented extensive evidence, this matter is now ripe for decision. For the reasons that follow, the Court hereby DENIES the motion for class certification filed on February 25, 1994 **(docket entry 23)**.

### I. *Background*

In their complaint, the putative class representatives sought certification under Federal Rule of Civil Procedure 23(b)(3) of a class defined as

[A]ll persons present in Puerto Rico on January 7, 1994 and thereafter, who have sustained personal injury by intoxication due to the oil spill from the barge MORRIS J. BERMAN near the northern coast

of Puerto Rico, which oil was spilled into the waters and on the shores of Puerto Rico.

(Complaint, ¶ 6.)

The plaintiffs have alleged injuries such as severe headaches, respiratory ailments and allergies, skin allergies and eruptions, nausea, dizziness, severe throat and nose ailments, severe eye irritation, and other related allergic and/or intoxicating reactions and/or symptoms as well as severe emotional pains, anguish and distress. The putative class representatives asserted that their putative class consisted of "over tens of thousands of persons," and that the compensatory damages attributable to these injuries were in an aggregate amount of no less than $150,-000,000.00. The plaintiffs later reasserted their request for class certification in a separate motion submitted shortly after their complaint was filed (**docket entry 23**).

The request for class certification was opposed by plaintiffs in Civil Action No. 94–1019CCC, the Commonwealth of Puerto Rico, on its own behalf and as public trustee and as *parens patriae* for the citizens of the Commonwealth, the Board on Environmental Quality of the Commonwealth of Puerto Rico, and the Department of Natural Resources of the Commonwealth of Puerto Rico (Commonwealth) (**docket entry 76**), as well as by defendant MetLife Capital Corporation (Metlife) (**docket entry 38**).

Cognizant of the admonition in Rule 23(c) that the question of class certification should be determined "[a]s soon as practicable after commencement of an action brought as a class action," the Court scheduled an evidentiary hearing for March 2, 1994, at which time the plaintiffs were to present evidence showing their compliance with the prerequisites of Rule 23.

At the March 2, 1994 hearing, the putative class plaintiffs proffered the testimony of Dr. A. López–Deynes, a medical sociologist, certified addictions specialist and sexologist. Although Dr. López–Deynes was prepared to testify concerning the alleged health implications of exposure to vapors from the spill, the Court found him not qualified to testify as an expert in that area. However, plaintiffs were granted a continuance of the hearing to allow

them additional time to secure expert assistance. The same was adjourned initially until March 30, 1994 and later reset, again at the request of plaintiffs, for June 1, 1994.

One week prior to the June 1, 1994 hearing, the putative plaintiffs filed their Reply to Metlife's Opposition to Class Certification (**docket entry 72**). In this memorandum, the class plaintiffs offered several alternative class definitions, and urged as well that "at this stage of the proceedings plaintiffs request that the instant action be certified solely as to the issue of the fault and/or negligence of the defendants, leaving the issues of damages and causation for separate consideration after the issue of fault and/or negligence is finally determined." (Reply at p. 3.) On this same date, the putative class plaintiffs filed an amended verified complaint on May 25, 1994 (**docket entry 75**) in which they reiterated their request for class certification.

At the June 1, 1994 hearing, defendants Bunker Group Puerto Rico, Inc. (Bunker), Pedro Rivera (Rivera), and MetLife all expressed the view that the putative class plaintiffs had modified their original motion for class certification. Although we noted that the putative class plaintiffs' approach was ambiguous, they were provided during the hearing with the opportunity to present their evidence in support of class certification.

The class action hearing was conducted over two days, concluding on June 2, 1994. During this hearing, the plaintiffs presented the testimony of experts Dr. Juan J. Rigau, Dr. Jesús A. González–Gavillán, and Dr. Braulio D. Jiménez, all of whom the court found to be fully qualified to testify as experts in their identified areas. These experts testified concerning the characteristics of the spilled oil, the manner and degree of dispersion of fumes from the spill, the various forms of exposure persons allegedly suffered, and the nature and extent of the alleged health implications of exposure to fumes from the spill. MetLife presented the testimony of expert Dr. Angel Román–Franco in opposition to the class plaintiffs' evidence.

At the conclusion of the class certification hearing, the Court ordered the putative class plaintiffs to submit a memorandum clarifying their position concerning the scope of the issues for which they sought class treatment. The putative class plaintiffs responded on June 9, 1994 with a memorandum (**docket entry 83**) in which they stated that the "class treatment of the issue of the liability of the defendants should include the adjudication of the issue of fault and/or negligence of the defendants and the causal relationship between their fault and/or negligence and the damages alleged by the plaintiffs." Thus, the plaintiffs have moved for certification of a class for all purposes other than the calculation of damages. The plaintiffs also stated that the class should be defined as:

> All persons presently residing in Puerto Rico, who were present in the northern coast of Puerto Rico between the areas of Loíza and Dorado, during the time period covering from January 7th, 1994, and up to February, 1994, and who allege to have inhaled or to have being [sic] otherwise exposed to the vapors or odors that emanated from the oil spilled from the barge MORRIS J. BERMAN near the northern coast of Puerto Rico, and who claim to have suffered one or more of the following symptoms after inhaling or otherwise being exposed to the aforementioned vapors or odor: headaches, respiratory ailments and allergies, skin allergies and eruptions, drowsiness, nausea, dizziness, vomiting, throat and nose ailments or irritations, and eye irritation.

On June 16, 1994, MetLife filed a supplemental memorandum in opposition to class certification that addressed the putative class plaintiffs' clarifications (**docket entry 88**). On June 27, 1994, the putative class plaintiffs filed a reply to MetLife's supplemental memorandum (**docket entry 93**).

## II. *Class Certification under Federal Rule of Civil Procedure 23(b)(3)*

### A. *Requirements:*

To be certified under Federal Rule of Civil Procedure 23(b)(3), a class must first satisfy Rule 23(a)'s requirements of numerosity of members, commonality of one or more ques-tions of law or fact, typicality of representative claims or defenses, and adequacy of representation. It must then also satisfy subsection (b)(3), which provides in relevant part that it is a prerequisite to certification that:

> (3) the Court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

■ "The plaintiff has the burden of showing that all the prerequisites for a class action have been met." *Makuc v. American Honda Motor Co., Inc.*, 835 F.2d 389, 394 (1st Cir.1987); *see also Barceló v. Brown*, 78 F.R.D. 531, 534 (D.P.R.1978). Failure to meet any one of the prerequisites of Rule 23(b)(3) precludes class certification. *See, e.g., Valentino v. Howlett*, 528 F.2d 975, 978 (7th Cir.1976).

■ Having considered all the evidence, we find that plaintiffs have failed to meet their burden in this case. Their proposal fails to meet Rule 23(a)'s requirements of "typicality" and "adequacy of representation." For reasons closely related to the proposal's failure on these elements, their class proposal also does not satisfy Rule 23(b)(3)'s requirements of "predominance" and "superiority."

### B. *Rule 23, "Mass Accident" Tort Cases, and the Evidence Presented in Support of and in Opposition to Class Certification*

The action plaintiffs wish to pursue through certification of a class is precisely the type of "mass accident" personal injury tort case that the drafters of Rule 23 identified as generally unsuited for class treatment. As the Rules Advisory Committee stated:

> A "mass accident" resulting in injuries to numerous persons is ordinarily not appropriate for a class action because of the likelihood that significant questions, not only of damages but of liability and defenses to liability, would be present, affecting the individuals in different ways. In these

circumstances an action conducted nominally as a class action would degenerate in practice into multiple lawsuits separately tried.

Rules Advisory Committee Notes, 39 F.R.D. 69, 103 (1966); *see also* 7B C. Wright, A. Miller, & M. Kane *Federal Practice and Procedure,* § 1783, at 76 (1986) ("allowing a class action to be brought in a mass tort situation is clearly contrary to the intent of the draftsmen of the rule....") This Court has followed that principle before, *see Alvarado–Morales v. Digital Equipment Corp.,* 669 F.Supp. 1173, 1186 (D.P.R.1987), *aff'd,* 843 F.2d 613 (1st Cir.1988), and other district courts in our Circuit have denied class certification in analogous circumstances, *see, e.g., Mattoon v. City of Pittsfield,* 128 F.R.D. 17 (D.Mass.1989) (denying class certification in water pollution personal injury case). Indeed, most cases are consistent with the view that prosecution of a class action for personal injuries in circumstances such as those presented here is both unwise and contrary to the terms of Rule 23. *See generally, e.g., In re Northern Dist. of Cal., Dalkon Shield, etc.,* 693 F.2d 847, 852–54 (9th Cir.1982), *cert. denied, sub nom., A.H. Robins Co. v. Abed,* 459 U.S. 1171, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983); *Delaney v. Borden, Inc.,* 99 F.R.D. 44 (E.D.Pa.1983); *In re Three Mile Island Litigation,* 87 F.R.D. 433, 441–43 (M.D.Pa.1980); *Ryan v. Eli Lilly & Company,* 84 F.R.D. 230 (D.S.C.1979); *Marchesi v. Eastern Airlines, Inc.,* 68 F.R.D. 500 (E.D.N.Y.1975); *Yandle v. PPG Industries, Inc.,* 65 F.R.D. 566 (E.D.Tex.1974); *Boring v. Medusa Portland Cement Co.,* 63 F.R.D. 78 (M.D.Pa.), *appeal dismissed,* 505 F.2d 729 (3d Cir.1974).

In fact, this action provides a particularly good example of why "mass tort" cases are generally not good candidates for class certification. To establish their entitlement to relief in this case, the plaintiffs must prove, in addition to any negligence or other fault on the part of one or more defendants, the *fact* of each class member's personal injury *and* the *causal link* between that individual's injury and the spill. The evidence presented at the class action hearing, including the evidence the *plaintiffs* presented, demonstrated conclusively that these questions

could not be answered meaningfully on a class-wide basis.

Because of the length of the class action testimony, the Court will not attempt to summarize all of the detailed scientific evidence. Nevertheless, we will make reference to those clearly established aspects of the evidence that are central to the disposition of this motion, as derived from the testimony of both the plaintiffs' experts as well as from the evidence presented by the opponents of class certification.

The predicate for the plaintiffs' suit is that exposure to vapors from the spill caused personal injuries. The plaintiffs assert that the exposure that gave rise to these injuries occurred over the period between January 7, 1994 and February 1994, in the region between Loíza and Dorado, Puerto Rico. They contend that injury and causation can be addressed within this time frame and region on a "class" basis. The evidence presented showed, however, that the factors that would go into establishing the fact of injury and the causal link between that injury and the spill would be numerous, would change upon complex interactions among variables, and would vary greatly over time, from region-to-region, and from person-to-person. Indeed, the evidence demonstrated that this would be true even for a shorter period of time and within a smaller region.

The evidence established that at least the following three factors are essential components in determining an injury in fact and a causal link between it and the spill. First, there is the composition of the vapors—the chemical constituents of the substance to which putative class members were allegedly exposed. The evidence showed that the vapors which were released as a result of the spill were not composed of a single element, but rather consisted of numerous different compounds. Each has different characteristics, and produces different effects on human health. Further, these various compounds changed differently as they reacted to environmental factors, and thus one cannot speak of the vapor itself as of uniform character. For example, the rates of evaporation and dispersion of the vapor's constituents were

affected by such variables as temperature and wind velocity, as did the density of the vapors over time and space. With these variances, one can reasonably state, came variances in exposure leading to the need of assessing the individualized circumstances of each personal injury claimed. The vapors, as they existed in Puerta de Tierra on the first day of the spill, were not the same as the vapors to which persons may have been exposed two weeks later in the area of Loíza.

Second, the environmental factors to which the oil and vapors were subject varied significantly over time, which lead to a variance in duration, intensity, and implications of exposure. For example, wave action, wind, precipitation and temperature varied from region-to-region over time. Each of these factors affected the density and character of the vapors. Exposure to the vapors cannot be equated with exposure to a stable chemical under substantially identical conditions; exposure did not occur in a closed, controlled environment.

The third factor consists of the members of the putative class. The evidence showed that each person's susceptibility to injury from the vapors would vary with such factors as age, weight, sex, and preexisting health conditions. Moreover, many of the ailments the plaintiffs wish to attribute to the spill, such as dizziness and headaches, are common and may be caused by factors other than exposure to oil vapors.

### C. Rule 23(a)(3) Typicality

To satisfy Rule 23(a)(3)'s typicality requirement, a class representative "must be part of the class and possess the same interest and suffer the same injury as the class members." *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 156, 102 S.Ct. 2364, 2370, 72 L.Ed.2d 740 (1982) (emphasis added, internal quotations omitted). Under the circumstances of this case, a class representative could not fulfill this requirement. As discussed, any injuries would be dependent upon the numerous variables present, including such matters as personal susceptibility to harm, and degree, nature and duration of exposure. No such claim can truly be "typical." *See, e.g., Alvarado–Morales,* 669 F.Supp. at 1185, 1186; *see also Mattoon,* 128

F.R.D. at 21; *Ryan,* 84 F.R.D. at 233. This is even more clearly the case when one considers the alleged class claim for emotional distress, which is intractably individual in character. *See Sanna v. Delta Airlines,* 132 F.R.D. 47, 50 (N.D.Ohio 1990); *Ikonen v. Hartz Mountain Corporation,* 122 F.R.D. 258, 263 (S.D.Cal.1988). Under these circumstances, the plaintiffs have failed to satisfy the typicality requirement of Rule 23(a)(3).

### D. Rule 23(a)(4) Adequacy of Representation

"Adequacy of representation depends on ... the absence of antagonism or conflicting interests, and a sharing of interest between class representatives and absentees." *Alvarado–Morales,* 669 F.Supp. at 1186. The proposed class fails to meet this requirement because if any cognizable personal injuries were caused by exposure to vapors from the spill—and for purposes of the motion for class certification the Court has assumed that such injuries could indeed have occurred—the evidence presented indicates that any such injuries would necessarily be of different severity, which would lead to contrary incentives that would preclude any class-wide "adequate representation."

Assuming that injury could occur, the evidence shows that some persons might have comparatively strong claims based on exposure, while others might have suffered only minor annoyance. The former would have an interest in vigorously litigating to secure a significant recovery, while the latter would have the incentive to reach a prompt settlement that maximizes the value of a small recovery. Any attempt to develop a uniform class approach to the litigation enhances the risk of failure on the merits. Similarly, a representative with a weak claim would likely develop a litigation approach that dilutes the value of strong claims. Any compromise among the approaches is prejudicial to each. The Court of Appeals for the Second Circuit has confronted an analogous situation in a case concerning allegedly toxic exposure to a chemical, and has observed:

> [T]he dynamics of a class action in a case such as this may either impair the ability of representative parties to protect the interest of the class or cause the inefficient use of judicial resources. These undesir-

able results stem from the fact that potential plaintiffs in toxic tort cases do not share common interests because of differences in the strength of their claims.

. . . .

If plaintiffs with strong claims remain members of the class, they may see their claims diluted because a settlement attractive to the defendants will in all likelihood occur. Weak plaintiffs, who may exist in very large numbers, stand to gain from even a small settlement.

*In re Agent Orange Prod. Liability Litigation,* 818 F.2d 145, 165–66 (2d Cir.1987), *cert. denied, sub nom., Pinkney v. Dow Chemical Co.,* 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 648 (1988). Given the pressure to settle and the likelihood of the nature of any settlement generated by the pressure of those with comparatively small claims, "[s]uch a settlement . . . is not likely to lead to a fund that can be distributed among the large number of class members who will assert claims and still compensate the strong plaintiffs for the value of their cases." *Id.* The nature of the plaintiffs' proposed class thus precludes compliance with Rule 23(a)(4).

**E.** *Rule 23(b)(3) Predominance of Common Issues*

■ The plaintiffs' class proposal also fails Rule 23(b)(3)'s requirement that the common questions of law or fact *predominate.* As the Rule's express language indicates, for a class to be certified under Rule 23(b)(3), there must not simply be some commonality of issues among claims. Rather, the issues that are common must *predominate* over individual issues. To predominate, "[i]t is not enough that the claims arise out of a common nucleus of operative fact. Instead, the common questions must be central to all the claims. . . . [C]ommon issues are predominant only if their resolution would 'provide a definite signal of the beginning of the end.'" *Mattoon,* 128 F.R.D. at 20 (quoting *Mertens v. Abbott Lab.,* 99 F.R.D. 38, 41 (D.N.H. 1983)).

In this personal injury case, the issues that would take the most judicial time to resolve, and which are central to the plaintiffs' ability to recover, will be individual issues of injury in fact and causation. This case is analogous to *Mattoon,* 128 F.R.D. at 21, in which the court observed that causation in a personal injury case predicated on exposure to water pollution "will necessarily be different for every person in the proposed class, based on each person's length of exposure to contaminated water, notice, pre-existing medical conditions and other factors." It is also analogous to the claims of air pollution injury for which the court refused certification in *Boring,* 63 F.R.D. at 84, because, among other reasons, "*each* plaintiff would have to separately establish what mixture of pollution caused him damage depending on the wind, location of the factories, etc." "Furthermore, the class members are geographically dispersed in such a fashion that it is unlikely that any large group suffered the same quantity of 'fallout.'" *Id.* at 85. As was true in *In re Northern Dist. of Cal., Dalkon Shield, Etc.,* 693 F.2d at 853, no one set of facts could establish the fact of injury and causation for each plaintiff. Even if the plaintiffs succeeded in establishing the fault or negligence of one or more defendants, the personal injury claimants would still have the bulk of their cases to prove, because any successful personal injury claimant will still have to prove injury in fact and causation. This precludes compliance with Rule 23(b)(3)'s predominance requirement.

Plaintiffs contend that causation and injury can be established on a class-wide basis. This, however, is predicated on a generalized theory of proof that is inconsistent with the evidence presented at the class action hearing. It is analogous to the theory of "general causation" that the Court of Appeals for the Second Circuit rejected in *In re Agent Orange Prod. Liability Litigation,* 818 F.2d at 165:

> The relevant question, therefore, is not whether Agent Orange has the capacity to cause harm, the generic causation issue, but whether it *did* cause harm and to whom. That determination is highly individualistic, and depends upon the characteristics of individual plaintiffs (*e.g.* state of health, lifestyle) and the nature of their exposure to Agent Orange.

(Emphasis ours.)

**F.** *Rule 23(b)(3) Superiority*

A class action is "superior" for purposes of Rule 23(b)(3) when it is clearly better than,

"and not just as good as, other available methods for handling the controversy." *Beebe v. Pacific Realty Trust,* 99 F.R.D. 60, 73 (D.Or.1983).

This proposed class fails to satisfy the requirements of typicality, adequacy of representation, and predominance of common issues. Under these circumstances, certification of a class action could not result in a "superior" vehicle for adjudication. Moreover, even if the proposed class were otherwise proper, a class action is certainly not a superior way of handling these personal injury claims.

First, the class is unmanageably broad. *See* Fed.R.Civ.P. 23(b)(3)(D). *Compare Boring,* 63 F.R.D. at 84. The process and cost to the plaintiff class of providing individualized notice to class members and of making suitable opt-out arrangements for such a class, *see Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978), will be disproportionate to any benefits that the plaintiffs might argue would accrue from class certification. Similarly, the expenditure of judicial resources to oversee the prosecution of the class action, including those resources essential to supervising notice and opt-out procedures, the effort required to assess the propriety of any proposed settlement, *see* Fed.R.Civ.P. 23(e), and the effort to manage the defense against the class action present additional and costly management problems. Our judicial resources would be more efficiently spent in managing the oil spill litigation on the basis of consolidated individual claims to ensure that the interests of all litigants are adequately presented.

As noted above, there is a significant reason for any claimant with a substantial claim to control the prosecution of his or her case. Fed.R.Civ.P. 23(b)(3)(A).

Moreover, the recently filed and currently pending Limitation of Liability Act suits concerning the oil spill, which are consolidated with this proceeding, provide a suitable and efficient vehicle for addressing the individual personal injury claims. Indeed, the law is clear that class proceedings are incompatible with the procedures of the Limitation of Liability Act, 46 U.S.C. § 183, *et seq.,* and Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims. *See Lloyd's Leasing Ltd. v. Bates,* 902 F.2d 368, 370 (5th Cir.1990); *In re Sause Brothers Ocean Towing,* 1992 A.M.C. 1869, 1869–1874, 1992 WL 220674 (D.Or.1992). It makes no sense to certify a class when to secure relief claimants will be required to file individual claims in the context of the Limitation of Liability Act proceedings. *Compare* Fed. R.Civ.P. 23(b)(3)(B).

SO ORDERED.