**Sue SPERA, James Surowka, Joan Tully, William Tully, Matthew Uto, Harry White, Richard Wood, Nelson Eppert, Helen Groves, Erwin Irmscher, James Keily, Ann Keily, Joseph Langley, and Richard Shore, Appellants,**

v.

**FLEMING, HOVENKAMP & GRAYSON, P.C., George M. Fleming, Mark Hovenkamp, and John Grayson, Appellees.**

No. 14–98–01272–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 31, 1999.

Larry J. Doherty, Houston, K. Scott Rothenberg, Bellaire, for appellants.

Frank W. Gerold, Rick Lee Oldenettel, Michael O'Brien, Houston, for appellees.

Panel consists of Justices MAURICE E. AMIDEI, EDELMAN, and WITTIG.

## OPINION

DON WITTIG, Justice.

This is an interlocutory appeal from an order denying class certification. Appellants, Sue Spera, James Surowka, Joan Tully, William Tully, Matthew Uto, Harry White, Richard Wood, Nelson Eppert, Helen Groves, Erwin Irmscher, James Keily, Ann Keily, Joseph Langley, and Richard Shore, bring one point of error complaining the trial court abused its discretion in denying class certification. We affirm.

## I. BACKGROUND

The law firm of Fleming, Hovenkamp & Grayson (FH & G) represented appellants

in a suit against Shell Oil Company and other defendants for providing defective materials. In December 1995, a settlement was reached. Judge Russell Lloyd, then presiding judge of the 334th Judicial District Court, reviewed the settlement and the contract for attorney's fees between FH & G and appellants. In November 1996, the judge modified most of the contingent fee contracts. Pursuant to the judge's order, the undisputed attorney's fees were paid to FH & G, and the remaining fees, "the disputed attorney's fees," were placed in an escrow account. FH & G appealed the judge's order. That appeal is presently pending before the First Court of Appeals.

From July 1997 through September 1998, in excess of 20,000 of the proposed class members resolved their claims with FH & G over the disputed attorney's fees. None of the appellants in this case concluded settlements with FH & G over the disputed attorney's fees.

On February 9, 1998, appellants filed the underlying suit against FH & G seeking class certification. Appellants claimed negligence, negligence per se, fraud, intentional and negligent misrepresentation, breach of fiduciary duty, fee forfeiture, breach of contract, legal malpractice, and conspiracy to defraud. Appellants' Amended Motion for Class Certification sought the adjudication of claims affecting funds still held in escrow by FH & G and the adjudication of a right of disgorgement for previously escrowed funds taken by FH & G.

The class certification hearing was held on October 9, 1998. Judge John Donovan, presiding judge of the 61st Judicial District Court, heard testimony and arguments. Daniel Hyde, counsel for Shell Oil Corporation, testified that the disputed attorney's fees in escrow could only be disbursed upon either the order of Judge Lloyd or the First Court of Appeals. He further testified that the issues related to attorney's fees raised by Judge Lloyd's order were properly before the First Court of Appeals. Judge Donovan denied appellant's motion for class certification in a general order without specifying which requirement appellants failed to meet.

## II. ANALYSIS

### Class Certification

In order to gain certification of a class action, a party must meet all the requirements of Texas Rule of Civil Procedure 42(a) and satisfy one of the subsections of Rule 42(b)(4). *See* TEX.R. CIV. P. 42. Under Rule 42(a), appellants must show:

(1) numerosity—the number of plaintiffs is so numerous that joinder of all class members is impracticable;

(2) commonality—there are questions of law or fact common to the class;

(3) typicality—the claims of the proposed representatives are typical of those of the class; and

(4) adequacy—the proposed representatives will fairly and adequately protect the interest of the class.

TEX.R. CIV. P. 42(a)(1)-(4). Appellants claim they satisfied an additional requirement under Rule 42(b)(4), because they showed that questions of law or fact common to the members of the class predominate over questions affecting individual members. Appellants further assert a class action is superior to other available methods for the fair and efficient adjudication of their claim. TEX.R. CIV. P. 42(b)(4).

There is no right to bring a lawsuit as a class action. *See Vinson v. Texas Commerce Bank,* 880 S.W.2d 820, 824 (Tex.App.—Dallas 1994, no writ). Rather, rule 42 provides only that the trial court may certify a class action if the plaintiff satisfies the requirements of the rule. *Id.* However, when the trial court makes a

decision of class status at an early stage of the proceeding before supporting facts are fully developed, it should err in favor of, and not against, maintenance of the class action. *See National Gypsum Co. v. Kirbyville Indep. Sch. Dist.*, 770 S.W.2d 621, 627 (Tex.App.—Beaumont 1989, writ dism'd w.o.j.); *Life Ins. Co. of Southwest v. Brister*, 722 S.W.2d 764, 774–75 (Tex. App.—Fort Worth 1986, no writ). The reason for erring in favor of class certification is because the class certification order is always subject to modification should later developments during the course of the trial so require. *Id.*; Tex.R. Civ. P. 42(c)(1).

■ Trial courts enjoy broad discretion in determining whether a lawsuit should be maintained as a class action. *See Dresser Indus., Inc. v. Snell*, 847 S.W.2d 367, 371 (Tex.App.—El Paso 1993, no writ). At the certification stage, the burden of proof is on the plaintiffs to establish their right to maintain an action as a class action. *See Life Ins. Co. of Southwest v. Brister*, 722 S.W.2d 764, 773 (Tex.App.—Fort Worth 1986, no writ). Though they must do more than merely allege that the requirements have been met and must at least show some facts to support certification, class proponents generally are not required to prove a prima facie case or make an extensive evidentiary showing in support of a motion for class certification. *See Clements v. League of United Latin American Citizens*, 800 S.W.2d 948, 952 (Tex.App.—Corpus Christi 1990, no writ); *Brister*, 722 S.W.2d at 773. The trial court may base its decision on pleadings or other material in the record. *See Clements*, 800 S.W.2d at 952; *National Gypsum Co.*, 770 S.W.2d at 626–27.

■ On appeal, review of the trial court's decision granting or denying certification is limited to determining whether the court abused its discretion. *See Mor-*gan v. Deere Credit, Inc., 889 S.W.2d 360, 365 (Tex.App.—Houston [14th Dist.] 1994, no writ); *Amoco Prod. Co. v. Hardy*, 628 S.W.2d 813, 816 (Tex.App.—Corpus Christi 1981, writ dism'd). In reviewing the trial court's ruling on certification, the appellate court is required to view the evidence in a light most favorable to the trial court's action and indulge every presumption in favor of the trial court's action. *See Dresser*, 847 S.W.2d at 372; *Angeles/Quinoco Securities Corp. v. Collison*, 841 S.W.2d 511, 513 (Tex.App.—Houston [14th Dist.] 1992, no writ). A trial court does not abuse its discretion when it bases its decision on conflicting evidence. *See Wiggins v. Enserch Exploration, Inc.*, 743 S.W.2d 332, 334 (Tex.App.—Dallas 1987, writ dism'd w.o.j.); *RSR Corp. v. Hayes*, 673 S.W.2d 928, 930 (Tex.App.—Dallas 1984, writ dism'd). That the trial court, in the opinion of the appellate court, made an error in judgment, does not alone demonstrate an abuse of discretion. *See Morgan*, 889 S.W.2d at 365; *Dresser*, 847 S.W.2d at 371. Rather, a trial court abuses its discretion when it: (1) does not properly apply the law to the undisputed facts; (2) acts arbitrarily or unreasonably; or (3) rules upon factual assertions not supported by evidence material in the record. *See Angeles/Quinoco*, 841 S.W.2d at 513; *Wiggins*, 743 S.W.2d at 334; *RSR*, 673 S.W.2d at 930; *Mahoney v. Cupp*, 638 S.W.2d 257, 261 (Tex.App.—Waco 1982, no writ) We will limit the scope of our review to two grounds we find sufficient to sustain the trial courts holding.

### 1. Commonality

■ The factual or legal basis for suit must be common to all members in a class action. *See Dresser*, 847 S.W.2d at 372. Questions common to the class are those questions which, when answered as to one class member, are answered as to all class members. *See Brister*, 722 S.W.2d at 772; *RSR*, 673 S.W.2d at 930.

The commonality requirement does not mean that all questions of law and fact must be identical, but that an issue of law or fact exists that inheres in the complaints of all the class members. *See Dresser*, 847 S.W.2d at 372.

 Common issues of law or fact must also predominate over the issues requiring individual adjudication for each class member. *See Brister*, 722 S.W.2d at 772. The test to be used in evaluating the predominance of an issue is not whether the common issues outnumber the individual issues, but whether common or individual issues will be the object of most of the efforts of the litigants and the court. *See National Gypsum*, 770 S.W.2d at 625; *Brister*, 722 S.W.2d at 772. If common issues predominate, then a judgment in favor of the class members should decisively settle the entire controversy and all that should remain is for other members of the class to file proof of their claim. *Id.* To decide whether the common issues predominate, the court must initially identify the substantive law issues that will control the outcome of the litigation. *Id.* The purpose of the court's inquiry into the substantive law issues is to determine whether the character and nature of the case satisfies the requirements of the class action procedural rules, not to weigh the substantive merits of each class member's claim. *Id.*

 Appellants assert the factual and legal bases of their claims against FH & G are common to all class members. Appellants argue FH & G's duties of disclosure of conflicts of interest and fiduciary duties do not change from client to client. Appellants, however, had a class action expert testify during the hearing on their behalf. He testified that this action involves at least three subgroups: (1) former FH & G clients who received nothing from the earlier litigation; (2) former FH & G clients who settled their interests in the earlier

litigation and who settled their dispute over attorney's fees and; (3) former FH & G clients who settled their interests in the earlier litigation and who did not settle their dispute over attorney's fees. Therefore, their own classifications establish at least three potential duties. Further, even if the duties were the same as and to these three subgroups, whether the duties were breached and the proximate cause for any breach will most certainly differ between these three subgroups.

 Appellants pleadings also assert a myriad of additional causes of action for this potential class including claims such as negligence, negligence per se, fraud, intentional and negligent misrepresentation, fee forfeiture, breach of contract, and malpractice. Appellants argue that these causes of action also present common questions that if answered by one would be answered as to all.

In support of this position, appellants place much emphasis on the "Dear Client" letters. Appellants were all similarly situated in their original suit, resulting in the settlement agreement, because they had all purchased or used polybutylene pipes. Therefore, FH & G sent the dear client letters to all the plaintiffs regarding their claims and the settlement. The metamorphosis of appellants' position thereafter diverges and discontinues to remain suitable for the varied future actions. For instance, the causes of action listed above pose multiple individual issues such as determining which potential class members relied on any negligent or intentional misrepresentation by way of dear client letters or other purported misrepresentations, who, if any of the 60,000, suffered mental anguish type harm, and what duty or duties were variously owed to whom. *See Brister*, 722 S.W.2d at 774 (recognizing that not all situations involving fraud and misrepresentation claims are appropriate for class certification because of material

variations of representations made and varying degrees of reliance); *Castano v. American Tobacco Co.*, 84 F.3d 734, 750 (5th Cir.1996) (finding proposed class was permeated with individual issues).

Viewing the facts in favor of denying certification, we find the evidence reveals sufficient facts and supporting law allowing, within the court's discretion, to refuse certification. We will next examine the typicality factor which also supports the trial court's ruling.

## 2. *Typicality*

 The claims of the class representatives, appellants, must be typical of the class as a whole. *See Dresser*, 847 S.W.2d at 372. That is, the representatives must "possess the same interest and suffer the same injury." *East Texas Motor Freight v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977). Although it is not necessary that the named representatives suffer precisely the same injury as the other class members, there must be a nexus between the injury suffered by the representatives and the injury suffered by the other members of the class. *See Dresser*, 847 S.W.2d at 372. To be typical, the named plaintiffs' claims must arise from the same event or course of conduct giving rise to the claims of the other class members. *See Adams*, 791 S.W.2d at 290. These claims must also be based on the same legal theory. *Id.* Ordinarily, the presence of even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff destroys the typicality of the class. *Id.* However, factual differences have not defeated class certification in other securities actions where the claims arose from the same legal theory. *Id.*

 To reiterate, we must view the evidence in the light most favorable to the trial court's ruling and indulge all presumptions in the trial court's favor. *See*

*Angeles/Quinoco*, 841 S.W.2d at 513. Appellants assert the potential class members' claims are all typical because all potential members were treated the same and suffered the same type of injury. Appellants argue that there is no difference to the type of injury each suffered, only to the amount of damages. These assertions might be correct within select specific subgroup and for certain individual claims. As the facts have already demonstrated, however, the minimally three different subgroups result in different duties, levels of reliance, and damages. Further, appellants fail to represent one of the three subgroups, identified by their own expert. Finally, some appellants involved in this case testified, albeit often on cross-examination, that they are not even asserting the same types of claims or injuries, despite similarities in their factual situations. One stated he is only seeking mental anguish damages. Another stated he is asserting his claim because his brother received more than he did in the settlement. Another stated she is not purporting to represent those who elected to sign off on the acceptance form and settlement of the disputed attorney's fees. While another claims, he never read one document that was sent to him by FH & G, and therefore, he did not rely on any of FH & G's dear client letters or representations.

## III. Conclusion

We recognized that another trial court might have come to a different conclusion, and certified the class. Trial judges are vested with broad discretion in determining whether a law suit may be maintained as a class action. *See Morgan*, 889 S.W.2d at 365; *Dresser*, 847 S.W.2d. at 371. Viewing the evidence in the light most favorable to the trial court's ruling and indulging every presumption in favor of its ruling, there are facts to support the trial court's judgment for failure to establish either the commonality or typicality re-

quirements. *See Angeles/Quinoco,* 841 S.W.2d at 513. We find the trial court did not abuse its discretion. Accordingly, we overrule appellants' only issue.

We affirm the trial court's judgment.