CHARLIE THOMAS COURTESY LEASING, INC. dba Third Coast Rent–A–Car, Kenneth Watson, Charlie Thomas, Republic Industries, Port City Imports, Inc., Robert Westrup, and Jack Sulephen, Appellants,

v.

Malinda Mouton TAYLOR and Patrick Hodgins, Appellees.

No. 14–00–00756–CV.

Court of Appeals of Texas, Houston (14th Dist.).

April 19, 2001.

William Green, III, Steven Wisch, Houston, for appellants.

Mark Aschermann, Tracey Conwell, Houston, for appellees.

Panel consists of Justices YATES, WITTIG, and FROST.

## OPINION

YATES, Justice.

This is an interlocutory appeal[1] from an order certifying a class action under Texas Rule of Civil Procedure 42. Because we find that the trial court's order does not meet the Texas Supreme Court's recently articulated interpretation of the requirements for class certification orders, we remand this cause back to the trial court. *Southwestern Ref. Co. v. Bernal,* 22 S.W.3d 425 (Tex.2000).

### I. FACTUAL AND PROCEDURAL BACKGROUND

This is a case brought by the plaintiffs/appellees, Malinda Mouton Taylor and Patrick Hodgins, against defendants/appellants, Charlie Thomas Courtesy Leasing, Inc. d/b/a Third Coast Rent–A–Car ("Third Coast"), Kenneth Watson, Charlie Thomas, Republic Industries, Port City Imports, Inc. ("Port City"), Robert Westrup, and Jack Sulephen.[2] Appellees brought a cause of action in district court for alleged violations of the Texas Debt Collection Act,[3] malicious prosecution, and abuse of process. They sought statutory and common law remedies, as well as attorneys' fees and exemplary damages.

According to appellees, certain individuals leased cars from Third Coast while their vehicles were being repaired by the dealership. After disputes arose over (a) whether the customer or the warrantor was obligated for the amount due for the rental car and/or (b) how much was owed, Watson filed criminal complaints in the justice courts of Harris County on behalf of Third Coast. The criminal complaints alleged that the amounts owed were less than $20.00, thereby invoking the justice court's jurisdiction,[4] even though the invoices attached to the complaints showed a larger sum was actually due—and in some cases, a much larger sum. For instance, although the affidavits filed in connection with the class representatives alleged Taylor and Hodgins owed only $20.00 apiece, the attached documentation alleged the debts owed were for $778.75 and $84.07, respectively. Appellees allege the reason for claiming an amount under $20.00 was because appellants knew that the Harris County District Attorney's office did not screen criminal complaints involving $20.00 or less.

After filing a criminal complaint but prior to trial, Watson used the threat of execution on the arrest warrants as leverage for negotiating a settlement of the amount of the actual debt, *i.e.,* the amount shown on the attachments to the complaint. Appellees further allege that the officers and directors were aware of, participated in, and even authorized these debt collection efforts.

---

1. TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(3) (Vernon Supp.2000).

2. Appellees alleged that Thomas, Republic Industries, Westrup, and Sulephen were shareholders, officers, and directors ("the officers and directors") of Third Coast during the relevant period and that Watson—an employee of Port City—acted as the custodian of records for Third Coast.

3. TEX. FIN.CODE ANN. § 392.001, *et seq.* (Vernon 1998 & Supp.2000).

4. Theft of service, where the claimed value of the service is $20 .00 or less, is a Class C misdemeanor. TEX. PEN.CODE ANN. § 31.04(e)(1) (Vernon Supp.2000). A Class C misdemeanor is punishable by fine only. TEX. PEN CODE ANN. § 12.23 (Vernon 1994). A justice court has original jurisdiction over cases punishable only by fine. TEX.CODE CRIM. PROC. ANN. art. 4.11 (Vernon Supp.2000).

In their second amended petition, appellees sought to certify their cause of action as a class action under Rule 42 of the Texas Rules of Civil Procedure. Théy allege there are 250 to 300 potential class members. After a hearing, the trial court signed an order granting appellees' motion for class certification.

## II. STANDARD OF REVIEW

■ A trial court has broad discretion in determining whether to grant or deny class certification. *Forsyth v. Lake LBJ Inv. Corp.*, 903 S.W.2d 146, 149 (Tex. App.—Austin 1995, writ dism'd w.o.j.). An appellate court may not substitute its judgment for. that of the trial court even if it would determine the issues differently than did the trial court. *Id.* Therefore, an appellate court may reverse a trial court's judgment only if the record shows an abuse of discretion. *General Motors Corp. v. Bloyed*, 916 S.W.2d 949, 955 (Tex.1996). An abuse of discretion occurs where (1) the trial court misapplied the law to undisputed facts, (2) the record does not reasonably support its findings, or (3) the trial court acted arbitrarily or unreasonably. *Spera v. Fleming*, 4 S.W.3d 805, 810 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

■ We view the evidence in the light most favorable to, and indulge every presumption in favor of, the trial court's action. *Sun Coast Res., Inc. v. Cooper*, 967 S.W.2d 525, 529 (Tex.App.—Houston [1st Dist.] 1998, pet. dism'd w.o.j.). "In applying this standard, we defer to the trial court's factual determinations so long as they are properly supported by the record[,] while reviewing its legal determinations *de novo.*" *Remington Arms Co. v. Luna*, 966 S.W.2d 641, 643 (Tex.App.—San Antonio 1998, pet. denied).

## III. CLASS CERTIFICATION

In two points of error, appellants argue that the trial court's order certifying a class action must be reversed because it does not comply with two recently announced interpretations of Rule 42 by the Texas Supreme Court. First, they argue that the trial court's order does not comply with *Southwestern Refining Co. v. Bernal*, 22 S.W.3d 425 (Tex.2000), because it does not indicate how the elements of Rule 42 were satisfied. Second, they argue that it does not comply with *Intratex Gas Co. v. Beeson*, 22 S.W.3d 398 (Tex.2000), because it creates a failsafe class. However, because it is impossible to evaluate whether the putative class representatives satisfy Rule 42's requirements absent a cognizable class, we address appellants' arguments in reverse order. *See Beeson,. 22 S.W.3d at 403 (citing *Metcalf v. Edelman*, 64 F.R.D. 407, 409 (N.D.Ill.1974) and *Hettinger v. Glass Specialty Co.*, 59 F.R.D. 286, 296 (N.D.Ill.1973)).

### A. The Class Definition

■ The supreme court has held that, as a threshold matter, "Rule 42 implicitly requires the representative plaintiffs to demonstrate ... that [the proposed class] is susceptible to precise definition." *Beeson*, 22 S.W.3d at 403. This, in turn, means "class members must be presently ascertainable by reference to objective criteria." *Id.* Stated differently, the class definition "should not be defined by criteria that are subjective or that require an analysis of the merits of the case." *Id.* at 403. "Deciding the *merits* of the suit in order to determine the scope of the class or its maintainability as a class is not appropriate." *Id.* at 404 (emphasis added) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)); *but see Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1106 (5th Cir.1993) (defining class as employees "whose pension benefits have been, or will be, reduced

or eliminated as a result of the overestimation of their Social Security benefits"). "A proposed class definition that *rests on the paramount liability question* cannot be objective, nor can the class members be presently ascertained; when the class definition is framed as a legal conclusion, the trial court has no way of ascertaining whether a given person is a member of the class until a determination of ultimate liability as to that person is made." *Beeson,* 22 S.W.3d at 404 (emphasis added). Such a definition creates a failsafe class because the class would be bound only by a judgment favorable to the plaintiffs.[5] *Id.*

The trial court in *Beeson* defined the class as gas producers "whose natural gas was taken by the defendant in quantities less than their ratable proportions." *Id.* The supreme court found that this was an abuse of discretion because the certified issue was whether Intratex had taken non-ratably from the producers. *Id.* Similarly, in *Sheldon,* the supreme court found the trial court's definition impermissible. There, the class was defined as those "who suffered past and/or future damage as a result of peeling or flaking paint on these vehicles caused by a defective paint process" or "who paid Ford or a Ford dealership for a paint repair to their vehicle to repair peeling or flaking paint caused by a defective paint process...." *Sheldon,* 22

S.W.3d at 448.[6] The trial court's definition was impermissible under *Beeson* because if the paint process was not defective, then no class would exist. *Id.* at 454. In other words, including the defective paint process theory as an element of the class definition impermissibly required a determination of the merits before the court could ensure the existence of a class.

■ Here, the trial court's certification order defined the class as "[a]ll persons who were Defendants in a Justice Court criminal theft of Service Complaint filed by [Third Coast] after September 1, 1994 where the affidavit swears the amount of the debt is equal to or less than $20.00 and the attached documents reveal that the amount of the claimed debt is greater than $20.00." This is not a prohibited definition because the class members are "presently ascertainable by reference to objective criteria." *Beeson,* 22 S.W.3d at 403. No resolution of the merits is required before class membership can be determined. *Id.* at 404. Nor does the definition rest upon the paramount liability question. *Id.* All that is required to determine who is a member of this class is to determine which individuals had a theft of services complaint filed by Third Coast in a justice court, where the complaint affirms that the debt is $20.00 or less, but the accompany-

---

5. For instance, suppose the class definition was "persons who own a defective truck." If it were determined that the truck was not defective, no one would be bound because they would fail to meet the class definition. On the other hand, if the truck was ultimately found to be defective, only then would the class be defined. The *Beeson* court found this result unpalatable because "rule [42] was never meant to be an exception to the rules of *res judicata* or to provide a risk-free method of litigation." *Id.* at 405 (quoting *Dafforn v. Rousseau Assoc.,* 1976-2 Trade Case ¶ 61, at 219 (N.D.Ind.1976)). However, if the definition were "persons who bought a truck manu-

factured from 1995 to 1999," then the definition would not be failsafe.

6. The appellate court affirmed the definition as modified to "those ... who allege ... a defect[ ]," but the supreme court also found that definition objectionable because the trial court "would have to inquire individually into each proposed class member's state of mind to ascertain class membership...." *Id.* at 454–55. Appellants here do not argue that the trial court's definition requires individual inquiry into each class member's state of mind; accordingly, we do not address this argument.

ing paperwork shows the debt actually exceeds this jurisdictional limit.

 Appellants argue that the class definition is improper because "[t]he assumption is that it is wrong (and thus actionable) for Third Coast to file a theft of service complaint for one day of a car rental if they are prepared to accept less than $20.00 for that one day of rental." We disagree for two reasons. First, appellees' allegation is that the Debt Collection Act was violated because appellants used improper means in attempting to extract a settlement of a debt with individual members of the class. TEX. FIN.CODE ANN. § 392.301(a) (Vernon 1998) (prohibiting, *inter alia,* a debt collector from falsely accusing the debtor of fraud or other crime or threatening the debtor with arrest for nonpayment of a debt without proper court proceedings). Second, whether appellants would have accepted less than $20.00 is in the nature of a defense to the class members' claims. Because class certification is not the appropriate stage of litigation for evaluating the substantive merits of each class member's claim,[7] it would be improper at this stage to decide whether appellants, in fact, were prepared to accept $20.00 or less in settlement of the claims. In short, if it is improper to evaluate the merits of the class members' claims at the certification stage, it is equally improper to evaluate the merits of any defense that may defeat liability. Accordingly, because the class definition does not create a failsafe class, we overrule appellants' first point of error.

### B. The Trial Court's Compliance With *Bernal*

 In their remaining point of error, appellants complain that the trial court's order must be reversed because it fails to demonstrate that the trial court rigorously analyzed whether all the prerequisites to Rule 42 were satisfied. *Bernal,* 22 S.W.3d at 434–35. Appellees maintain that appellants have waived this point of error by not raising it in the court below. This issue was rendered moot, however, because class counsel conceded during oral arguments that the failure of the trial court's order to specify a trial plan under *Bernal* requires that we reverse.[8]

### IV. Conclusion

Because the trial court's definition of the class is susceptible to precise definition presently ascertainable by reference to objective criteria, it complies with the su-

---

7. *See e.g., Amerada Hess Corp. v. Garza,* 973 S.W.2d 667, 681 (Tex.App.—Corpus Christi 1996, writ dism'd w.o.j.) citing *Eisen,* 417 U.S. at 178, 94 S.Ct. 2140 ("[i]n determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of [Rule 42] are met") (quoting *Miller v. Mackey Int'l,* 452 F.2d 424, 427 (5th Cir. 1971)). Similarly, "the presence of even an arguable defense peculiar to different plaintiffs [will not] destroy the entire class ." *Angeles/Quinoco Sec. Corp. v. Collison,* 841 S.W.2d 511, 516 (Tex.App.—Houston [14th Dist.] 1992, no writ) (citing *Adams v. Reagan,* 791 S.W.2d 284, 290 (Tex.App.—Fort Worth 1990, no writ)).

8. Shortly before the trial court certified the class, the supreme court decided *Bernal.* In rejecting a "certify now and worry later" approach to class action litigation, the supreme court stated that "[c]ourts must perform a 'rigorous analysis' before ruling on class certification to determine whether *all* prerequisites to certification have been met." *Id.* at 435 (emphasis added) (citing *General Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)). Additionally, "[a] trial court's certification order must indicate how the claims will likely be tried *so that conformance with Rule 42 may be meaningfully evaluated." Id.* (emphasis added).

preme court's decision in *Beeson. See* 22 S.W.3d at 403. However, as both parties now agree, the failure of the certification order to include a trial plan requires that we reverse and remand this cause back to the trial court for further proceedings in light of the supreme court's opinion in *Bernal*, 22 S.W.3d at 434–35.