**Kent STOBAUGH, Nancy Stobaugh, Richard Heidbrink and Doris Heidbrink, Individually and on Behalf of All Similarly Situated Persons, Appellants,**

v.

**NORWEGIAN CRUISE LINE LIMITED d/b/a Norwegian Cruise Line, Appellee.**

No. 14–02–00351–CV.

Court of Appeals of Texas, Houston (14th Dist.).

May 1, 2003.

Jennifer Elizabeth Bloom, Joanne M. Vorpahl, Houston, for appellants.

James Patrick Cooney, Houston, for appellees.

Panel consists of Justices YATES, ANDERSON, and FROST.

## OPINION

KEM THOMPSON FROST, Justice.

This is an interlocutory appeal of an order denying class certification. Appellants/plaintiffs Kent Stobaugh, Nancy Stobaugh, Richard Heidbrink and Doris Heidbrink ("Passengers") challenge the trial court's order denying class certification of their claims against appellee/defendant Norwegian Cruise Line Limited d/b/a Norwegian Cruise Line ("Cruise Line") arising out of a cruise the Passengers took aboard the Cruise Line's vessel, M/S DREAMWARD. We affirm the trial court's order denying class certification.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The M/S DREAMWARD left the Port of New York on August 31, 1996, on a seven-day cruise to Bermuda and back. The DREAMWARD headed east out of the Port of New York, attempting to avoid Hurricane Edouard, which was in the Atlantic Ocean threatening the east coast of the United States. This attempt failed, and the DREAMWARD was caught in extremely high seas and hurricane-force winds. Several passengers were injured, and many passengers became seasick. During the storm, passengers were generally restricted to their cabins and access to various services usually provided to passengers was, for the most part, unavailable. The severe weather also caused delays in the cruise schedule. Eventually, however, the storm subsided, the inclement weather improved, and the vessel went on to Bermuda. But because of the delays caused by the severe weather, the DREAMWARD cancelled its scheduled port call at St. George's, Bermuda, and proceeded directly to Hamilton, Bermuda.

There were 1,259 ticketed passengers on the DREAMWARD for this voyage, 1,147 of whom were United States nationals from 29 different states. Approximately 25 of these passengers were Texas residents. The Passengers became interested in this cruise after receiving a mailing from a Houston travel agent advertising a golf tour to Bermuda with a prominent, local golf professional. This travel agent, Kay Waghorne, handled most of the Passengers' arrangements for the cruise. Waghorne gave the Passengers a brochure from the Cruise Line, and some time thereafter, the Passengers paid for the cruise. Each of the Passengers except Kent Stobaugh signed a statement saying that the passenger had read the "Questions and Answers" section of the Cruise Line's brochure and understood the policies outlined in these materials. The first paragraph of the "Questions and Answers" section essentially provides that the terms of the contract of passage contained in the passenger cruise tickets as well as the terms of the brochure govern the cruise. This provision states:

> The transportation of passengers and baggage is governed by the terms and conditions of the Contract of Passage contained in the Passenger Cruise Ticket. The passenger's acceptance of the passenger ticket contract, and acceptance of passage on the vessel, constitutes acceptance of the terms, conditions, and information, contained in this brochure and the passenger ticket contract. It is recommended that you read the terms carefully.

Following their return from the cruise, the Passengers filed suit in Harris County

district court alleging the following claims: (1) breach of contract; (2) breach of express and implied warranties; (3) negligent misrepresentation; (4) negligence and gross negligence; (5) violations of the Texas Deceptive Trade Practices Act ("DTPA"); and (6) a request for a declaratory judgment that the passenger tickets are not part of their contract, that the forum-selection clause in the tickets specifying a Florida forum is not enforceable, and that the Cruise Line conducted the voyage in a negligent and improper manner. Regarding damages, the Passengers alleged that they and the proposed class "suffered physical injuries such as seasickness, bumps, bruises, and worse, and ... suffered the serious mental distress and fear caused by being at sea in a hurricane."

The Passengers filed a motion in the trial court requesting class certification of their claims. Though there was some ambiguity about who would be in the proposed class, at a minimum, the Passengers sought certification as to all United States passengers on the cruise who have not settled their claims.[1] After a hearing on the matter, the trial court denied the Passengers' motion to certify.

## II. STANDARD OF REVIEW

We review a trial court's ruling on class certification for an abuse of discretion. *Southwestern Ref. Co., Inc. v. Bernal,* 22 S.W.3d 425, 439 (Tex.2000). A trial court abuses its discretion when rul-

ing on class certification if it (1) does not properly apply the law to the undisputed facts, (2) acts arbitrarily or unreasonably, or (3) rules upon factual assertions not supported by the record. *Spera v. Fleming, Hovenkamp & Grayson, P.C.,* 4 S.W.3d 805, 810 (Tex.App.-Houston [14th Dist.] 1999, no pet.). Texas Rule of Civil Procedure 42 governs class certification. *Bernal,* 22 S.W.3d at 433. Because this rule is patterned after Federal Rule of Civil Procedure 23, Texas courts consider federal decisions and authorities interpreting current federal class-action requirements persuasive authority. *Id.*

Any class certified by the trial court must satisfy four threshold requirements:

(1) *Numerosity*—The class must be so numerous that joinder of all members is impracticable.

(2) *Commonality*—There must be questions of law or fact common to the class.

(3) *Typicality*—The claims or defenses of the representative parties must be typical of the claims or defenses of the class.

(4) *Adequacy of Representation*—The representative parties must be capable of fairly and adequately protecting the interests of the class.

*See* TEX.R. CIV. P. 42(a). The Passengers also must show that their proposed class action satisfies at least one of the criteria enumerated under Rule 42(b). *See Ber-*

---

1. In their appellate brief, the Passengers claim that they moved to certify a class of all passengers on the cruise who are United States citizens and who have not settled their claims. The Passengers' petition and motion to certify do not exclude passengers who have settled or who are not United States citizens. Further, the motion to certify states that the potential class would have more than 1200 members; however, the Passenger Manifest shows that there were 1259 passengers and

only 1147 passengers who were United States citizens. Nonetheless, at the certification hearing, the Passengers' counsel stated in open court that the Passengers were seeking certification of a class consisting of the United States residents who were fare-paying passengers and who have not settled. For the purposes of our analysis, we presume that the Passengers sought certification of the class described by their counsel at the certification hearing.

*nal,* 22 S.W.3d at 433. The Passengers moved for certification under Rule 42(b)(4), which requires the following findings:

(1) ***Predominance of Common Questions***—The questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and

(2) ***Superiority of Methods for Trial of Claims***—A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

*See* Tex.R. Civ. P. 42(b)(4). The trial court did not make any findings or indicate the basis for its ruling; therefore, we may affirm the trial court's order if the trial court did not abuse its discretion in finding the Passengers failed to satisfy any one of the above requirements. *See Monsanto Co. v. Davis,* 25 S.W.3d 773, 782 (Tex.App.-Waco 2000, pet. dism'd w.o.j.).

██ We view the evidence in the light most favorable to, and indulge every presumption in favor of, the trial court's action. *Charlie Thomas Courtesy Leasing, Inc. v. Taylor,* 44 S.W.3d 684, 687 (Tex. App.-Houston [14th Dist.] 2001, no pet.). In applying this standard, we defer to the trial court's factual determinations so long as they are properly supported by the record. We review the trial court's legal determinations *de novo. Id.* In six issues, the Passengers argue the trial court abused its discretion in denying their motion to certify because they properly defined the class and because they satisfied the numerosity, commonality, typicality, adequacy-of-representation, predominance, and superiority requirements.

### III. Analysis

██ We first review the trial court's implied finding that the Passengers failed to satisfy the predominance requirement, one of the most stringent requirements for class certification. *See Bernal,* 22 S.W.3d at 433. A court determines if common issues predominate by (1) identifying the substantive issues of the case that will control the outcome of the litigation; (2) assessing which issues will predominate; and (3) determining if the predominating issues are, in fact, those common to the class. *See Bernal,* 22 S.W.3d at 434. A court making this determination must go beyond the pleadings and must scrutinize the claims, defenses, relevant facts, and applicable substantive law in order to discern if the proposed class representatives have satisfied the predominance requirement. *Id.* at 435. The test for predominance is not whether common issues outnumber issues that are not common, but whether common or individual issues will be the object of most of the efforts of the litigants and the trial court. *Id.* at 434. If, after common issues are resolved, presenting and resolving individual issues is likely to be an overwhelming or unmanageable task for a single jury, then common issues do not predominate. *Id.* Ideally, a judgment in favor of the class representatives should settle decisively the entire controversy, and all that should remain is for other members of the class to file individual proofs of claim. *See id.* The predominance requirement is intended to prevent class-action litigation when the sheer complexity and diversity of the individual issues would overwhelm or confuse a jury or severely compromise a party's ability to present viable claims or defenses. *Id.*

██ In a class-action certification, it is important to apply the predominance requirement rigorously to ensure that the proposed class is sufficiently cohesive to warrant adjudication by representation. *Id.* at 435. The exacting standards of the predominance inquiry act as a check on the flexible commonality requirement. *Id.*

A trial court should not certify unless it determines, based on a "rigorous analysis" of the proposed class action, that individual issues can be considered in a manageable, time-efficient, and fair manner. *Id.* at 435–36.

■ The Passengers assert that all proposed class members took the same cruise under the same contract—the Norwegian Cruise Line Brochure ("Cruise Brochure"). The Cruise Line, however, maintains that the terms and conditions contained in the passenger tickets are part of the contracts between the Cruise Line and the proposed class members. This contract-formation question would have to be resolved before any fact-finding as to breach of contract and damages.[2] This question clearly introduces individual issues.

The Passengers assert that the receipt of the Cruise Brochure and payment by the Passengers created a binding contract. The evidence in the record demonstrates that the contract formation *vis-à-vis* the cruise contract was not the same for all passengers. Another passenger on the cruise, John Holthusen, who is not a proposed class representative, made his travel arrangements through a different travel agent. Holthusen testified that he did not receive a Cruise Line brochure until after he had paid for the tickets for his companion and himself. The contract-formation issue appears to vary even among the proposed class representatives. Three of

them signed statements saying that they had read the "Questions and Answers" section of the Cruise Brochure and understood the policies outlined therein, which provide that the terms of the contract of passage contained in the cruise tickets as well as the terms of the Cruise Brochure govern the cruise. Kent Stobaugh, however, did not sign this statement. Thus, even with these six passengers, there are three different fact patterns regarding contract formation. The Passengers have not shown that common fact questions regarding contract formation predominate.

To the extent the Passengers base their express warranty, implied warranty, negligent misrepresentation, and DTPA claims on the Cruise Brochure or the passenger ticket, this same diversity of fact patterns exists. The Passengers have not shown that common fact questions predominate as to these claims, either.

The Passengers also base their claims on oral representations allegedly made by employees or agents of the Cruise Line. The Passengers have not cited, and we have not found, evidence in the record showing that these alleged oral misrepresentations were the same or similar among the proposed class members. Absent such a showing, the Passengers have not established that common fact questions predominate regarding these alleged oral representations.

The Passengers argue that issues regarding individual reliance are largely non-

2. The Passengers assert that this court's opinion in a previous appeal in this case established the following as law of the case: (1) the Cruise Line's issuance of the passenger tickets and its insistence that the terms of the passenger tickets are part of its contracts with the cruise passengers was a deceptive trade practice, (2) the Cruise Line misrepresented the terms of its contracts with the passengers by representing that the passenger tickets were part of the passengers' contracts, and (3) the

terms of the passenger tickets were not part of the passengers' contracts with the Cruise Line. We disagree. Because this court did not rule on any of these issues in the previous appeal, these three propositions are not law of the case. *See Hudson v. Wakefield,* 711 S.W.2d 628, 630 (Tex.1986); *Stobaugh v. Norwegian Cruise Line Ltd.,* 5 S.W.3d 232, 234–36 (Tex.App.-Houston [14th Dist.] 1999, pet. denied).

issues because reliance is not a necessary element for recovery under the DTPA, citing *Weitzel v. Barnes* and other cases. 691 S.W.2d 598, 600 (Tex.1985). The Passengers, however, apparently overlook the 1995 amendments to the DTPA, which make reliance an element for "laundry list" violations. *See* Act of May 19, 1995, 74th Leg., R.S., ch. 414, § 5, 1995 Tex. Gen. Laws 2988, 2992 (current version at Tex. Bus. & Com.Code § 17.50(a)(1)); *Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 684, 46 Tex. Sup.Ct. J. 103, 109 (Tex.2002). Because the Passengers have alleged "laundry list" violations of the DTPA, reliance is an element of their DTPA "laundry list" claims as well as their claims for breach of express warranty (to a certain extent) and negligent misrepresentation. *See Schein, Inc.*, 102 S.W.3d at 686, 46 Tex. Sup.Ct. J. at 108–09. Moreover, the authorities upon which the Passengers rely in their appellate brief are not persuasive. Two of the cases they cite have been reversed since the Passengers filed their appellate brief. *See Sandwich Chef of Texas, Inc. v. Reliance Nat. Indem. Ins. Co.*, 202 F.R.D. 484 (S.D.Tex.2001), *rev'd*, 319 F.3d 205, 214–24 (5th Cir.2003); *Schein, Inc. v. Stromboe*, 28 S.W.3d 196 (Tex.App.-Austin 2000), *rev'd*, 102 S.W.3d at 693–700, 46 Tex. Sup. Ct. J. at 114–19.

The Texas Supreme Court has stressed the limited circumstances under which claims involving reliance are suitable for class-action treatment:

> This does not mean ... that reliance or other elements of their causes of action cannot be proved class-wide with evidence generally applicable to all class members; class-wide proof is possible when class-wide evidence exists ... If a plaintiff could prove reliance in an individual action with the same evidence offered to show class-wide reliance, then

the issue is one of law and fact common to the class. The question the court must decide before certifying a class, after rigorous analysis and not merely a lick and a prayer, is whether the plaintiffs have demonstrated that they can meet their burden of proof in such a way that common issues predominate over individual ones.

*Schein, Inc.*, 102 S.W.3d at 693–94, 46 Tex. Sup.Ct. J. at 114. The Passengers have not cited and we have not found evidence in the record showing that they established "class-wide reliance" regarding their breach of express warranty, negligent misrepresentation, and DTPA "laundry list" claims. We conclude that the Passengers have not shown that common fact questions predominate regarding these reliance issues. *See id.*, 102 S.W.3d at 692–94, 46 Tex. Sup.Ct. J. at 114–15; *Spera*, 4 S.W.3d at 811–12.

In their proposed trial plan, the Passengers seek exemplary damages for the proposed class as well as other damages that they describe as follows:

> (1) a full refund of the ticket price and other out-of-pocket damages, (2) treble damages of three times the ticket price, (3) a reasonable value for being forced to endure a violent and unpleasant cruise through a dangerous hurricane, (4) a one size fits all recovery for the minor physical symptoms all experienced, the least common denominator of such damages as determined by the jury, (5) attorneys fees and costs, and (6) pre-judgment and post-judgment interest ... [T]he named Plaintiffs and the entire proposed plaintiff class suffered in a substantially similar way, including emotional distress, seasickness, fear, and minor physical injury. No recovery for

serious physical injury or for medical expenses is sought.

The Cruise Line points to various problems with individual issues regarding the "other out-of-pocket damages" portion of the first damage element listed above. But, even assuming that the first damage element was free from any such problems, the second, third, and fourth elements raise significant concerns regarding individual issues.

As to the third element listed above, the Passengers seek recovery for emotional distress and fear.[3] Regarding these alleged damages, even the Passengers themselves had very different responses to their shared experience at sea. For example, proposed class representative Doris Heidbrink testified that she was "really terrified," that the cruise frightened her a great deal, and that the experience is something that still bothers her. Her husband, proposed class representative Richard Heidbrink, testified that though he had concerns about himself, his main worry was about his wife. The testimony of just these two Passengers suggests different levels of emotional distress and fear. Though they introduced various complaint letters into evidence at the class-certification hearing, the Passengers have not shown that the emotional distress and fear experienced by the proposed class members were so similar that common fact questions predominate regarding the third damage element. *See Bernal*, 22 S.W.3d at 436–38; *Spera*, 4 S.W.3d at 811–12.

Likewise, regarding seasickness and physical injury for the fourth damage element, the class representatives themselves had different experiences, with resulting injuries and sickness falling along a continuum varying from mild to more severe.

Kent Stobaugh was queasy but did not vomit or fall down. Nancy Stobaugh experienced nausea and vomiting and fell down at least three times. Doris Heidbrink testified she was "really seasick" and "very nauseated," and that she was plagued by these symptoms for some time before Mrs. Stobaugh was even affected. Mrs. Heidbrink fell down once in the bathroom while she was vomiting. Richard Heidbrink testified that though he felt queasy, he did not get seasick. Other than the queasiness or seasickness that they experienced, the Heidbrinks sustained no physical injuries. Neither of the Stobaughs indicated that they suffered any other physical injuries either. In contrast, John Holthusen, a passenger who is not a proposed class representative, testified that though he did not experience motion sickness, he twisted his back and had pain down his right leg after he was knocked down a flight of stairs by a passenger who fell into him during the severe weather. Holthusen received medical treatment for his physical injuries, both during and after the cruise. It is clear from the evidence in the record that though the passengers shared a common experience at sea, they did not experience the same ailments and injuries, or did not experience them to the same degree of severity. Thus, we conclude the Passengers have not shown that common fact questions predominate regarding seasickness and physical injuries in the fourth damage element. *See Bernal*, 22 S.W.3d at 436–38; *Spera*, 4 S.W.3d at 811–12.

In the trial court and on appeal, the Passengers have argued that any individual differences regarding these damages can be cured by having the jury award a "one size fits all recovery for the minor physical symptoms all experienced, the

---

3. The only issue before this court is whether the trial court abused its discretion in denying class certification. The merits of the Passengers' claims are not before us, and we do not address the validity of any of their claims or damages theories.

least common denominator of such damages. . . ." The Passengers do not specify how this award would be calculated; however, based on the evidence at the class-certification hearing, the least common denominator seems to be an experience of queasiness with no seasickness, vomiting or other physical injury. But, in their petition, the Passengers allege that the class members suffered "seasickness, bumps, bruises and worse." The Passengers have not amended their pleadings to omit these damage claims, and it is not clear that they could readily do so. *See Schein, Inc.,* 102 S.W.3d at 694, 46 Tex. Sup.Ct. J. at 115. Furthermore, it is not clear that a class action is superior—another requirement of Rule 42(b)(4)—if it necessitates that plaintiffs give up substantial rights, nor is there any evidence that the willingness of the Passengers to forego seasickness and physical-injury compensation in excess of a least common denominator is typical of the other members of the class. *See id.* (stating, in the context of proposed class representatives' willingness to forego consequential-damage claims that were not amenable to class-action treatment, that it is not clear that class action is superior in such a context and that it is not clear that the willingness of the proposed class representatives to forego these claims is typical of the other proposed class members).

The Passengers also explicitly state that they are not seeking recovery for any serious personal injury or for medical expenses. The evidence indicates that some passengers, such as John Holthusen, sustained more serious physical injuries than any of the four proposed class representatives. The Passengers have not excluded these passengers from the proposed class, and, again, it is not clear that a class action is superior if it contemplates that these potential class members must forfeit substantial rights to recover for these more serious physical injuries. *See Schein, Inc.,* 102 S.W.3d at 694, 46 Tex. Sup.Ct. J. at 115 (stating that it is not clear that a class action is superior if it necessitates that plaintiffs give up substantial rights).

As to the second damage element, the Passengers seek treble damages under the DTPA as well as exemplary damages. In their proposed trial plan, the Passengers state that after liability has been established, each class member will be able to prove damages by completing a proof of claim form. Nonetheless, the trial plan contemplates a three-phase trial to a single jury, with the third phase being the determination of exemplary damages. It is not clear to us how exemplary or statutory damages can be determined on a classwide basis or prior to determinations of actual damages following the submission of completed proof of claim forms. *See id.,* 102 S.W.3d at 695, 46 Tex. Sup.Ct. J. at 115–16. We conclude the Passengers have not shown that common fact questions predominate regarding exemplary or statutory damages in the second damage element. *See id.* In sum, the Passengers have not shown that common fact questions predominate as to damages.

The Passengers argue that they have satisfied the predominance requirement because their claims arise from the same misrepresentations and the same contract-the Cruise Brochure. However, as discussed above, the Passengers have not shown that common fact questions predominate regarding contract issues, the Cruise Brochure, and the alleged misrepresentations. The Passengers also assert that they satisfied the predominance requirement because all of the proposed class members traveled through the same hurricane at the same time on the same vessel. In this regard, the Passengers cite

various cases, including several involving cruise ships. Among them is *Bucci v. Cunard Line Ltd.*, a case in which a Pennsylvania trial court certified a class action of approximately 400 cruise passengers as to claims arising from a power failure during a cruise. 35 Pa. D. & C.3d 228, 230–41 (Pa.Com.Pl.1985). Though this case is factually similar, we find it unpersuasive because it was decided under Pennsylvania law, under which a "'decision in favor of maintaining a class action should be liberally made.'" *Id.* at 231 (quoting *Cox v. City of Chester*, 76 Pa.Cmwlth. 446, 464 A.2d 613, 615 (1983)). We are bound by Texas law and the decisions of our high court compel a much different approach

and apply a much more "rigorous analysis." *See Schein, Inc.*, 102 S.W.3d at 692–700, 46 Tex. Sup.Ct. J. at 114–19; *Bernal*, 22 S.W.3d at 433–39. Many of the other cases on which the Passengers rely are not on point.[4] Furthermore, there are many cases from other jurisdictions rejecting class-action treatment in the passenger-cruise context.[5]

The Passengers also cite cases from other jurisdictions for the proposition that class-action treatment is appropriate in mass tort cases involving a single cause of personal injuries. On this issue, we are bound by Texas Supreme Court precedent. Although our high court has not precluded

4. *See Desiderio v. Celebrity Cruise Lines, Inc.*, 1999 A.M.C. 2723, 1999 WL 440775 (S.D.N.Y. Jun.28, 1999) (mentioning that case involved class action on behalf of cruise passengers without ruling on any class-certification issues); *Freeman v. Celebrity Cruises, Inc.*, 1994 WL 689809 (S.D.N.Y. Dec.8, 1994) (discussing class-definition issues in unpublished opinion in case where defendants acknowledged that class certification was appropriate); *Cada v. Costa Line, Inc.*, 547 F.Supp. 85, 86–87 (N.D.Ill.1982) (denying motion for partial summary judgment in class action but not addressing class-certification issues); *Bentkowski v. Marfuerza Compania Maritima, S.A.*, 70 F.R.D. 401, 403–05 (E.D.Pa.1976) (reaffirming prior certification of class of 200 cruise passengers who got sick from contaminated food or water, without addressing predominance requirement and stating that commonality was satisfied because the only issue that was certified for class-action treatment was the defendants' negligence); *Hernandez v. The Motor Vessel Skyward*, 61 F.R.D. 558, 560–62 (S.D.Fla.1973) (certifying class of cruise passengers who got sick from contaminated food or water, without addressing predominance requirement and indicating commonality was satisfied because the only issue that was certified for class-action treatment was the defendants' negligence), *aff'd mem.*, 507 F.2d 1278 (5th Cir.1975); *Weatherly v. Deloitte & Touche*, 905 S.W.2d 642, 648–50 (Tex.App.-Houston [14th Dist.] 1995, writ dism'd w.o.j.) (holding class should be certified in case under Texas Securities Act where

plaintiffs did not have to prove reliance, materiality was based on an objective standard, and the focus of the substantive law was on the conduct of the defendants not on the conduct of the individual buyers), *leave granted, mand. denied*, 951 S.W.2d 394 (Tex.1997).

5. *See Neenan v. Carnival Corp.*, 199 F.R.D. 372, 374–77 (S.D.Fla.2001) (holding class action not appropriate because individual causation and damages issues predominated in action against cruise line by passengers seeking property damage and damages for severe discomfort and nausea caused by failure of ship's sanitary system); *Commonwealth of Puerto Rico v. M/V Emily S*, 158 F.R.D. 9, 10–16 (D.Puerto Rico 1994) (holding class action not appropriate because individual causation and damages issues predominated in action against cruise line by passengers seeking damages for personal injuries caused by exposure to oil spill during cruise); *Kornberg v. Carnival Cruise Lines, Inc.*, 1986 A.M.C. 854, 1985 WL 69, at *1–3 (S.D.Fla. Jun.17, 1985) (holding class action not appropriate because individual misrepresentation, reliance, and damages issues predominated in action against cruise line by passengers seeking damages for emotional distress caused by failure of ship's sanitary system); *Casper v. Cunard Line, Ltd.*, 560 F.Supp. 240, 243–45 (E.D.Pa.1983) (holding class action not appropriate because individual misrepresentation, reliance, and conflict-of-laws issues predominated in action against cruise line by passengers).

class actions in mass torts, it has made it very clear that class-action treatment is rarely appropriate for resolving personal-injury claims. *See Bernal,* 22 S.W.3d at 436 (reversing class-action certification of personal injury claims allegedly caused by a single explosion). Further, Texas law requires that courts rigorously apply the predominance requirement to ensure that the proposed class is sufficiently cohesive to warrant adjudication by representation. *See id.* at 435. Applying this law, we find no abuse of discretion by the trial court in denying class certification in this case.

## IV. CONCLUSION

For the reasons stated above, we conclude. the trial court did not abuse its discretion in its implied determination that the questions of law or fact common to the members of the proposed class do not predominate over questions affecting only individual members. Therefore, we overrule the Passengers' sixth issue. Based on this ruling, we need not address the Passengers' other appellate issues. We affirm the trial court's order denying class certification.