Affirmed and Opinion filed May 1, 2003









Affirmed
and Opinion filed May 1, 2003.          

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-00351-CV

____________

 

KENT STOBAUGH, NANCY STOBAUGH, RICHARD HEIDBRINK AND
DORIS HEIDBRINK, INDIVIDUALLY AND ON BEHALF OF ALL SIMILARLY SITUATED PERSONS, Appellants

 

V.

 

NORWEGIAN CRUISE LINE LIMITED D/B/A NORWEGIAN CRUISE
LINE, Appellee

 



 

On Appeal from the 270th District Court

Harris
County, Texas

Trial Court Cause No. 96-56183

 



 

O P I N I O N

This is
an interlocutory appeal of an order denying class certification.  Appellants/plaintiffs Kent Stobaugh, Nancy
Stobaugh, Richard Heidbrink and Doris Heidbrink (APassengers@) challenge the trial court=s order denying class certification
of their claims against appellee/defendant Norwegian Cruise Line Limited d/b/a
Norwegian Cruise Line (ACruise Line@) arising out of a cruise the Passengers took aboard the
Cruise Line=s vessel, M/S DREAMWARD.  We affirm the trial court=s order denying class certification.








                              I. 
Factual and Procedural Background

The M/S
DREAMWARD left the Port of New York on August 31, 1996, on a seven-day cruise
to Bermuda and back.  The DREAMWARD
headed east out of the Port of New York, attempting to avoid Hurricane Edouard,
which was in the Atlantic Ocean threatening the east coast of the United
States.  This attempt failed, and the
DREAMWARD was caught in extremely high seas and hurricane-force winds.  Several passengers were injured, and many
passengers became seasick.  During the
storm, passengers were generally restricted to their cabins and access to
various services usually provided to passengers was, for the most part,
unavailable.  The severe weather also
caused delays in the cruise schedule. 
Eventually, however, the storm subsided, the inclement weather improved,
and the vessel went on to Bermuda.  But
because of the delays caused by the severe weather, the DREAMWARD cancelled its
scheduled port call at St. George=s, Bermuda, and proceeded directly to
Hamilton, Bermuda. 

There
were 1,259 ticketed passengers on the DREAMWARD for this voyage, 1,147 of whom
were United States nationals from 29 different states.  Approximately 25 of these passengers were
Texas residents.  The Passengers became
interested in this cruise after receiving a mailing from a Houston travel agent
advertising a golf tour to Bermuda with a prominent, local golf
professional.  This travel agent, Kay
Waghorne, handled most of the Passengers= arrangements for the cruise.  Waghorne gave the Passengers a brochure from
the Cruise Line, and some time thereafter, the Passengers paid for the
cruise.  Each of the Passengers except
Kent Stobaugh signed a statement saying that the passenger had read the AQuestions and Answers@ section of the Cruise Line=s brochure and understood the
policies outlined in these materials. 
The first paragraph of the AQuestions and Answers@ section essentially provides that
the terms of the contract of passage contained in the passenger cruise tickets
as well as the terms of the brochure govern the cruise.  This provision states:

 








The transportation of passengers and baggage is governed
by the terms and conditions of the Contract of Passage contained in the
Passenger Cruise Ticket.  The passenger=s acceptance of the passenger ticket
contract, and acceptance of passage on the vessel, constitutes acceptance of
the terms, conditions, and information, contained in this brochure and the
passenger ticket contract.  It is
recommended that you read the terms carefully. 


Following
their return from the cruise, the Passengers filed suit in Harris County
district court alleging the following claims: (1) breach of contract; (2)
breach of express and implied warranties; (3) negligent misrepresentation; (4)
negligence and gross negligence; (5) violations of the Texas Deceptive Trade
Practices Act (ADTPA@); and (6) a request for a declaratory judgment that the
passenger tickets are not part of their contract, that the forum-selection
clause in the tickets specifying a Florida forum is not enforceable, and that
the Cruise Line conducted the voyage in a negligent and improper manner.  Regarding damages, the Passengers alleged
that they and the proposed class Asuffered physical injuries such as
seasickness, bumps, bruises, and worse, and . . .  suffered the serious mental distress and fear
caused by being at sea in a hurricane.@ 


The Passengers
filed a motion in the trial court requesting class certification of their
claims.  Though there was some ambiguity
about who would be in the proposed class, at a minimum, the Passengers sought
certification as to all United States passengers on the cruise who have not
settled their claims.[1]  After a hearing on the matter, the trial
court denied the Passengers= motion to certify. 

 








                                                    II. 
Standard of Review

We
review a trial court=s ruling on class certification for an abuse of discretion.  Southwestern Ref. Co., Inc. v. Bernal, 22
S.W.3d 425, 439 (Tex. 2000).  A trial
court abuses its discretion when ruling on class certification if it (1) does
not properly apply the law to the undisputed facts, (2) acts arbitrarily or
unreasonably, or (3) rules upon factual assertions not supported by the
record.  Spera v. Fleming, Hovenkamp
& Grayson, P.C., 4 S.W.3d 805, 810 (Tex. App.CHouston [14th Dist.] 1999, no
pet.).  Texas Rule of Civil Procedure 42
governs class certification.  Bernal,
22 S.W.3d at 433.  Because this rule is
patterned after Federal Rule of Civil Procedure 23, Texas courts consider
federal decisions and authorities interpreting current federal class-action
requirements persuasive authority.  Id.

Any
class certified by the trial court must satisfy four threshold requirements: 

(1)       Numerosity
C The class must so numerous that joinder of all
members is impracticable.

(2)       Commonality
C There must be questions of law or fact common to the
class.

(3)       Typicality
C The claims or defenses of the representative parties
must be typical of the claims or defenses of the class.

(4)       Adequacy
of Representation C The representative parties must be capable of fairly
and adequately protecting the interests of the class.  

 

See Tex.
R. Civ. P. 42(a).  The Passengers
also must show that their proposed class action satisfies at least one of the
criteria enumerated under Rule 42(b).  See
Bernal, 22 S.W.3d at 433.  The
Passengers moved for certification under Rule 42(b)(4), which requires the
following findings: 

(1) Predominance
of Common Questions C The questions of law or fact common to the members of
the class predominate over any questions affecting only individual members; and


(2) Superiority
of Methods for Trial of Claims C A class
action is superior to other available methods for the fair and efficient
adjudication of the controversy.  








See Tex. R. Civ.
P. 42(b)(4).  The trial court did not make any findings or
indicate the basis for its ruling; therefore, we may affirm the trial court=s order if the trial court did not
abuse its discretion in finding the Passengers failed to satisfy any one of the
above requirements.  See Monsanto Co.
v. Davis, 25 S.W.3d 773, 782 (Tex. App.CWaco 2000, pet. dism=d w.o.j.).  

We view the evidence in the light most favorable to,
and indulge every presumption in favor of, the trial court=s action.  Charlie Thomas Courtesy Leasing, Inc. v.
Taylor, 44 S.W.3d 684, 687 (Tex. App.CHouston [14th Dist.] 2001, no
pet.).  In applying this standard, we
defer to the trial court=s factual determinations so long as they are properly
supported by the record.  We review the
trial court=s legal determinations de novo.  Id. 
In six issues, the Passengers argue the trial court abused its
discretion in denying their motion to certify because they properly defined the
class and because they satisfied the numerosity, commonality, typicality,
adequacy-of-representation, predominance, and superiority requirements.  

                                                                III. 
Analysis








We first
review the trial court=s implied finding that the Passengers failed to satisfy the
predominance requirement, one of the most stringent requirements for class
certification.  See Bernal,
22 S.W.3d at 433.  A court determines if
common issues predominate by (1) identifying the substantive issues of the case
that will control the outcome of the litigation; (2) assessing which issues
will predominate; and (3) determining if the predominating issues are, in fact,
those common to the class.  See Bernal,
22 S.W.3d at 434.  A court making this
determination must go beyond the pleadings and must scrutinize the claims,
defenses, relevant facts, and applicable substantive law in order to discern if
the proposed class representatives have satisfied the predominance
requirement.  Id. at 435.  The test for predominance is not whether
common issues outnumber issues that are not common, but whether common or
individual issues will be the object of most of the efforts of the litigants
and the trial court.  Id. at
434.  If, after common issues are
resolved, presenting and resolving individual issues is likely to be an
overwhelming or unmanageable task for a single jury, then common issues do not
predominate.  Id.  Ideally, a judgment in favor of the class
representatives should settle decisively the entire controversy, and all that
should remain is for other members of the class to file individual proofs of
claim.  See id.  The predominance requirement is intended to
prevent class-action litigation when the sheer complexity and diversity of the
individual issues would overwhelm or confuse a jury or severely compromise a
party=s ability to present viable claims or
defenses.  Id.  

In a
class-action certification, it is important to apply the predominance
requirement rigorously to ensure that the proposed class is sufficiently
cohesive to warrant adjudication by representation.  Id. at 435.  The exacting standards of the predominance
inquiry act as a check on the flexible commonality requirement.  Id. 
A trial court should not certify unless it determines, based on a Arigorous analysis@ of the proposed class action, that
individual issues can be considered in a manageable, time-efficient, and fair
manner.  Id. at 435B36. 


The
Passengers assert that all proposed class members took the same cruise under
the same contract C the Norwegian Cruise Line Brochure (ACruise Brochure@). 
The Cruise Line, however, maintains that the terms and conditions
contained in the passenger tickets are part of the contracts between the Cruise
Line and the proposed class members. 
This contract-formation question would have to be resolved before any fact-finding
as to breach of contract and damages.[2]  This question clearly introduces individual
issues.  








The
Passengers assert that the receipt of the Cruise Brochure and payment by the
Passengers created a binding contract. 
The evidence in the record demonstrates that the contract formation vis-à-vis
the cruise contract was not the same for all passengers.  Another passenger on the cruise, John
Holthusen, who is not a proposed class representative, made his travel
arrangements through a different travel agent. 
Holthusen testified that he did not receive a Cruise Line brochure until
after he had paid for the tickets for his companion and himself.  The contract-formation issue appears to vary
even among the proposed class representatives. 
Three of them signed statements saying that they had read the AQuestions and Answers@ section of the Cruise Brochure and
understood the policies outlined therein, which provides that the terms of the
contract of passage contained in the cruise tickets as well as the terms of the
Cruise Brochure govern the cruise.  Kent
Stobaugh, however, did not sign this statement. 
Thus, even with these six passengers, there are three different fact
patterns regarding contract formation. 
The Passengers have not shown that common fact questions regarding
contract formation predominate.  

To the extent
the Passengers base their express warranty, implied warranty, negligent
misrepresentation, and DTPA claims on the Cruise Brochure or the passenger
ticket, this same diversity of fact patterns exists.  The Passengers have not shown that common
fact questions predominate as to these claims, either.

The
Passengers also base their claims on oral representations allegedly made by
employees or agents of the Cruise Line. 
The Passengers have not cited, and we have not found, evidence in the
record showing that these alleged oral misrepresentations were the same or
similar among the proposed class members. 
Absent such a showing, the Passengers have not established that common
fact questions predominate regarding these alleged oral representations.








The
Passengers argue that issues regarding individual reliance are largely
nonissues because reliance is not a necessary element for recovery under the
DTPA, citing Weitzel v. Barnes and other cases.  691 S.W.2d 598, 600 (Tex. 1985).  The Passengers, however, apparently overlook
the 1995 amendments to the DTPA, which make reliance an element for Alaundry list@ violations.  See Act of May 19, 1995, 74th Leg., R.S., ch. 414, '
5, 1995 Tex. Gen. Laws 2988, 2992 (current version at Tex. Bus. & Com. Code '
17.50(a)(1)); Schein,
Inc. v. Stromboe, CS.W.3dC, 46 Tex. Sup. Ct. J. 103, 109, 2002
WL 31426407, at *7 (Tex. Oct. 31, 2002). 
Because the Passengers have alleged Alaundry list@ violations of the DTPA, reliance is
an element of  their DTPA Alaundry list@ claims as well as their claims for
breach of express warranty (to a certain extent) and negligent
misrepresentation.  See Schein, Inc.,
CS.W.3d at C, 46 Tex. Sup. Ct. J. at 108B09, 2002 WL 31426407, at *7.  Moreover, the authorities upon which the
Passengers rely in their appellate brief are not persuasive.  Two of the cases they cite have been reversed
since the Passengers filed their appellate brief.  See Sandwich Chef of Texas, Inc. v.
Reliance Nat. Indem. Ins. Co., 202 F.R.D. 484 (S.D. Tex. 2001), rev=d, 319 F.3d 205, 214B24 (5th Cir. 2003); Schein, Inc.
v. Stromboe, 28 S.W.3d 196 (Tex. App.CAustin 2000), rev=d, CS.W.3d at C, 46 Tex. Sup. Ct. J. at 114B19, 2002 WL 31426407, at *13B19. 


The
Texas Supreme Court has stressed the limited circumstances under which claims
involving reliance are suitable for class-action treatment:

This does
not mean . . . that reliance or other elements of their causes of action cannot
be proved class‑wide with evidence generally applicable to all class
members; class‑wide proof is possible when class‑wide evidence
exists . . . If a plaintiff could prove reliance in an individual action with
the same evidence offered to show class‑wide reliance, then the issue is
one of law and fact common to the class. 
The question the court must decide before certifying a class, after
rigorous analysis and not merely a lick and a prayer, is whether the plaintiffs
have demonstrated that they can meet their burden of proof in such a way that
common issues predominate over individual ones.

 








Schein, Inc., CS.W.3d at C, 46 Tex. Sup. Ct. J. at 114, 2002 WL
31426407, at *13.  The Passengers have
not cited and we have not found evidence in the record showing that they
established Aclass-wide reliance@ regarding their breach of express
warranty, negligent misrepresentation, 
and DTPA Alaundry list@ claims.  We conclude
that the Passengers have not shown that common fact questions predominate
regarding these reliance issues.  See
id., 46 Tex. Sup. Ct. J. at 114B15, 
2002 WL 31426407 at *13B14; Spera, 4 S.W.3d at 811B12.  
         In their proposed trial
plan, the Passengers seek exemplary damages for the proposed class as well as
other damages that they describe as follows: 

(1) a full refund of the ticket price and other
out-of-pocket damages, (2) treble damages of three times the ticket price, (3)
a reasonable value for being forced to endure a violent and unpleasant cruise
through a dangerous hurricane, (4)  a one
size fits all recovery for the minor physical symptoms all experienced, the least
common denominator of such damages as determined by the jury, (5) attorneys
fees and costs,and (6) pre-judgment and post-judgment interest . . . [T]he
named Plaintiffs and the entire proposed plaintiff class suffered in a
substantially similar way, including emotional distress, seasickness, fear, and
minor physical injury.  No recovery for
serious physical injury or for medical expenses is sought.

The
Cruise Line points to various problems with individual issues regarding
the  Aother out-of-pocket damages@ portion of the first damage element
listed above.  But, even assuming that
the first damage element was free from any such problems, the second, third,
and fourth elements raise significant concerns regarding individual
issues.  








As to
the third element listed above, the Passengers seek recovery for emotional
distress and fear.[3]  Regarding these alleged damages, even the
Passengers themselves had very different responses to their shared experience
at sea.  For example, proposed class
representative Doris Heidbrink testified that she was Areally terrified,@ that the cruise frightened her a
great deal, and that the experience is something that still bothers her.  Her husband, proposed class representative
Richard Heidbrink, testified that though he had concerns about himself, his
main worry was about his wife.  The
testimony of just these two Passengers suggests different levels of emotional
distress and fear.  Though they
introduced various complaint letters into evidence at the class-certification
hearing, the Passengers have not shown that the emotional distress and fear
experienced by the proposed class members were so similar that common fact
questions predominate regarding the third damage element.  See Bernal, 22 S.W.3d at 436B38; Spera, 4 S.W.3d at 811B12. 

            Likewise,
regarding seasickness and physical injury for the fourth damage element, the
class representatives themselves had different experiences, with resulting
injuries and sickness falling along a continuum varying from mild to more
severe.  Kent Stobaugh was queasy but did
not vomit or fall down.  Nancy Stobaugh
experienced nausea and vomiting and fell down at least three times.  Doris Heidbrink testified she was Areally seasick@ and Avery nauseated,@ and that she was plagued by these
symptoms for some time before Mrs. Stobaugh was even affected.  Mrs. Heidbrink fell down once in the bathroom
while she was vomiting.  Richard
Heidbrink testified that though he felt queasy, he did not get seasick.  Other than the queasiness or seasickness that
they experienced, the Heidbrinks sustained no physical injuries.  Neither of the Stobaughs indicated that they
suffered any other physical injuries either. 
In contrast, John Holthusen, a passenger who is not a proposed class
representative, testified that though he did not experience motion sickness, he
twisted his back and had pain down his right leg after he was knocked down a
flight of stairs by a passenger who fell into him during the severe
weather.  Holthusen received medical
treatment for his physical injuries, both during and after the cruise.  It is clear from the evidence in the record
that though the passengers shared a common experience at sea, they did not
experience the same ailments and injuries, or did not experience them to the
same degree of severity.  Thus, we
conclude the Passengers have not shown that common fact questions predominate
regarding seasickness and physical injuries in the fourth damage element.  See Bernal, 22 S.W.3d at 436B38; Spera, 4 S.W.3d at 811B12.








            In
the trial court and on appeal, the Passengers have argued that any individual
differences regarding these damages can be cured by having the jury award a Aone size fits all recovery for the
minor physical symptoms all experienced, the least common denominator of such
damages . . . .@  The Passengers do not
specify how this award would be calculated; however, based on the evidence at
the class-certification hearing, the least common denominator seems to be an
experience of queasiness with no seasickness, vomiting or other physical
injury.  But, in their petition, the
Passengers allege that the class members suffered Aseasickness, bumps, bruises and
worse.@ 
The Passengers have not amended their pleadings to omit these damage
claims, and it is not clear that they could readily do so.  See Schein, Inc., CS.W.3d at C, 46 Tex. Sup. Ct. J. at 115, 2002 WL
31426407, at *14.    Furthermore, it is
not clear that a class action is superior C another requirement of Rule 42(b)(4)
C if it necessitates that plaintiffs
give up substantial rights, nor is there any evidence that the willingness of
the Passengers to forego seasickness and physical-injury compensation in excess
of a least common denominator is typical of the other members of the
class.  See id. (stating, in the
context of proposed class representatives= willingness to forego
consequential-damage claims that were not amenable to class-action treatment,
that it is not clear that class action is superior in such a context and that
it is not clear that the willingness of the proposed class representatives to
forego these claims is typical of the other proposed class members).  

The
Passengers also explicitly state that they are not seeking recovery for any
serious personal injury or for medical expenses. The evidence indicates that
some passengers, such as John Holthusen, sustained more serious physical
injuries than any of the four proposed class representatives.  The Passengers have not excluded these
passengers from the proposed class, and, again, it is not clear that a class
action is superior if it contemplates that these potential class members must
forfeit substantial rights to recover for these more serious physical injuries.  See Schein, Inc., CS.W.3d at C, 46 Tex. Sup. Ct. J. at 115, 2002 WL
31426407, at *14 (stating that it is not clear that a class action is superior
if it necessitates that plaintiffs give up substantial rights).   








As to
the second damage element, the Passengers seek treble damages under the DTPA as
well as exemplary damages.  In their
proposed trial plan, the Passengers state that after liability has been established,
each class member will be able to prove damages by completing a proof of claim
form.  Nonetheless, the trial plan
contemplates a three-phase trial to a single jury, with the third phase being
the determination of exemplary damages. 
It is not clear to us how exemplary or statutory damages can be
determined on a classwide basis or prior to determinations of actual damages
following the submission of completed proof of claim forms.  See id., 46 Tex. Sup. Ct. J. at 115B16, 
2002 WL 31426407 at *15.  We
conclude the Passengers have not shown that common fact questions predominate
regarding exemplary or statutory damages in the second damage element.  See id.  In sum, the Passengers have not shown that
common fact questions predominate as to damages.








The
Passengers argue that they have satisfied the predominance requirement because
their claims arise from the same misrepresentations and the same contract C the Cruise Brochure.  However, as discussed above, the Passengers
have not shown that common fact questions predominate regarding contract
issues, the Cruise Brochure, and the alleged misrepresentations.  The Passengers also assert that they
satisfied the predominance requirement because all of the proposed class
members traveled through the same hurricane at the same time on the same
vessel.  In this regard, the Passengers
cite various cases, including several involving cruise ships.  Among them is Bucci v. Cunard Line Ltd.,
a case in which a Pennsylvania trial court certified a class action of
approximately 400 cruise passengers as to claims arising from a power failure
during a cruise.  35 Pa. D. & C.3d
228, 230B41 (Pa. Ct. Comm. Pl. 1985).  Though this case is factually similar, we
find it unpersuasive because it was decided under Pennsylvania law, under which
a A>decision in favor of maintaining a
class action should be liberally made.=@ 
Id. at 231 (quoting Cox v. City of Chester, 464 A.2d 613,
615 (Pa. Commw. Ct. 1983)).  We are bound
by Texas law and the decisions of our high court compel a much different
approach and apply a much more Arigorous analysis.@ 
See Schein, Inc., CS.W.3d at C, 46 Tex. Sup. Ct. J. at 114B19, 2002 WL 31426407, at *13B19; Bernal, 22 S.W.3d at  433B39. 
Many of the other cases on which the Passengers rely are not on point.[4]  Furthermore, there are many cases from other
jurisdictions rejecting class-action treatment in the passenger-cruise context.[5]

The
Passengers also cite cases from other jurisdictions for the proposition that
class-action treatment is appropriate in mass tort cases involving a single
cause of personal injuries.  On this
issue, we are bound by Texas Supreme Court precedent.  Although our high court has not precluded
class actions in mass torts, it has made it very clear that class-action
treatment is rarely appropriate for resolving personal-injury claims.  See Bernal, 22 S.W.3d at  436 (reversing class-action certification of
personal injury claims allegedly caused by a single explosion).  Further, Texas law requires that courts
rigorously apply the predominance requirement to ensure that the proposed class
is sufficiently cohesive to warrant adjudication by representation.  See id. at 435.  Applying this law, we find no abuse of
discretion by the trial court in denying class certification in this case.








                                                             IV.  Conclusion

For the
reasons stated above, we conclude the trial court did not abuse its discretion
in its implied determination that the questions of law or fact common to the
members of the proposed class do not predominate over questions affecting only
individual members.  Therefore, we
overrule the Passengers= sixth issue.  Based on
this ruling, we need not address the Passengers= other appellate issues.  We affirm the trial court=s order denying class certification.

 

 

 

/s/        Kem
Thompson Frost

Justice

 

 

Judgment
rendered and Opinion filed May 1, 2003.

 

Panel consists of Justices Yates,
Anderson, and Frost.

 

 











[1]  In their
appellate brief, the Passengers claim that they moved to certify a class of all
passengers on the cruise who are United States citizens and who have not
settled their claims.  The Passengers= petition and motion to certify do not exclude
passengers who have settled or who are not United States citizens.  Further, the motion to certify states that
the potential class would have more than 1200 members; however, the Passenger
Manifest shows that there were 1259 passengers and only 1147 passengers who
were United States citizens. 
Nonetheless, at the certification hearing, the Passengers= counsel stated in open court that the Passengers were
seeking certification of a class consisting of the United States residents who
were fare-paying passengers and who have not settled.  For the purposes of our analysis, we presume
that the Passengers sought certification of the class described by their
counsel at the certification hearing.





[2]  The Passengers
assert that this court=s opinion in a previous appeal in this case
established the following as law of the case: (1) the Cruise Line=s issuance of the passenger tickets and its insistence
that the terms of the passenger tickets are part of its contracts with the
cruise passengers was a deceptive trade practice, (2) the Cruise Line
misrepresented the terms of its contracts with the passengers by representing
that the passenger tickets were part of the passengers= contracts, and (3) the terms of the passenger tickets
were not part of the passengers= contracts with the Cruise Line.  We disagree. Because this court did not rule
on any of these issues in the previous appeal, these three propositions are not
law of the case.  See Hudson v.
Wakefield, 711 S.W.2d 628, 630 (Tex. 1986); Stobaugh v. Norwegian Cruise
Line Ltd., 5 S.W.3d 232, 234B36 (Tex.
App.CHouston [14th Dist.] 1999, pet. denied).





[3]  The only issue
before this court is whether the trial court abused its discretion in denying
class certification.  The merits of the
Passengers= claims are not before us, and we do not address the
validity of any of their claims or damages theories.





[4]  See
Desiderio v. Celebrity Cruise Lines, Inc., 1999 A.M.C.  2723, 1999 WL 440775 (S.D. N.Y. Jun. 28,
1999) (mentioning that case involved class action on behalf of cruise
passengers without ruling on any class-certification issues); Freeman v.
Celebrity Cruises, Inc., 1994 WL 689809 (S.D. N.Y. Dec. 8, 1994)
(discussing class-definition issues in unpublished opinion in case where
defendants acknowledged that class certification was appropriate); Cada v.
Costa Line, Inc., 547 F.Supp. 85, 86B87 (N.D.
Ill. 1982) (denying motion for partial summary judgment in class action but not
addressing class-certification issues); Bentkowski v. Marfuerza Compania
Maritima, S.A., 70 F.R.D. 401, 403B05 (E.D.
Pa. 1976) (reaffirming prior certification of class of 200 cruise passengers
who got sick from contaminated food or water, without addressing predominance
requirement and stating that commonality was satisfied because the only issue
that was certified for class-action treatment was the defendants= negligence); Hernandez v. The Motor Vessel Skyward,
61 F.R.D. 558, 560B62 (S.D. Fla. 1973) (certifying class of cruise
passengers who got sick from contaminated food or water, without addressing
predominance requirement and indicating commonality was satisfied because the
only issue that was certified for class-action treatment was the defendants= negligence), aff=d mem., 507
F.2d 1278 (5th Cir. 1975); Weatherly v. Deloitte & Touche, 905
S.W.2d 642, 648B50 (Tex. App.CHouston
[14th Dist.] 1995, writ dism=d w.o.j.) (holding class should be certified in case under
Texas Securities Act where plaintiffs did not have to prove reliance,
materiality was based on an objective standard, and the focus of the
substantive law was on the conduct of the defendants not on the conduct of the
individual buyers), leave granted, mand. denied, 951 S.W.2d 394 (Tex.
1997). 





[5]  See Neenan
v. Carnival Corp., 199 F.R.D. 372, 374B77 (S.D.
Fla. 2001) (holding class action not appropriate because individual causation
and damages issues predominated in action against cruise line by passengers
seeking property damage and damages for severe discomfort and nausea caused by
failure of ship=s sanitary system); Commonwealth of Puerto Rico v.
M/V Emily S, 158 F.R.D. 9, 10B16 (D.
Puerto Rico 1994) (holding class action not appropriate because individual
causation and damages issues predominated in action against cruise line by
passengers seeking damages for personal injuries caused by exposure to oil
spill during cruise); Kornberg v. Carnival Cruise Lines, Inc., 1986
A.M.C. 854, 1985 WL 69, at *1B3 (S.D. Fla. Jun. 17, 1985) (holding class action not
appropriate because individual misrepresentation, reliance, and damages issues
predominated in action against cruise line by passengers seeking damages for
emotional distress caused by failure of ship=s
sanitary system); Casper v. Cunard Line, Ltd., 560 F.Supp. 240, 243B45 (E.D. Pa. 1983) (holding class action not
appropriate because individual misrepresentation, reliance, and
conflict-of-laws issues predominated in action against cruise line by
passengers).